W. W. HAGERTY, Plaintiff and Appellant, v. H. C. HALL, Defendant and Respondent.

No. 9840.

Supreme Court of Montana. June 2, 1959.

340 Pac. (2d) 147.

Wuerthner & Wuerthner, Great Falls, for appellant.

John P. Wuerthner argued orally.

Ralph J. Anderson and Stanley P. Sorenson, Helena, for respondent.

Ralph J. Anderson argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment in favor of the defendant in the sum of $1,605 together with $750 attorney's fees. The district court found generally in favor of the defendant and against the plaintiff.

The appellant will hereafter be referred to as the plaintiff; the respondent as the defendant. The plaintiff resides in

Browning. The defendant is an attorney at law in Great Falls who had been first employed as the plaintiff's attorney about the year 1936 until about May of 1955. He had done much legal work over those years for the plaintiff.

The plaintiff's second amended complaint is a standard complaint for recovery upon a note and foreclosure of a mortgage securing the note. The details of the giving of the note and mortgage will be further discussed later.

The defendant's answer first makes appropriate denials, then as an affirmative defense, defendant alleged failure to renew the mortgage within the period required by R.C.M. 1947, sec. 52-206. As a second affirmative defense, defendant alleged that the plaintiff, without any request, offered to advance to the defendant a sum of money sufficient to enable the defendant to liquidate pending obligations with the understanding that the defendant would continue to represent the plaintiff in all matters requiring legal assistance; *that the reasonable value of the legal services rendered would be applied as payment upon such note until the one offset the other;* and that the note and mortgage were given by the defendant to the plaintiff without any request or suggestion from the plaintiff as evidence of the advance made by the plaintiff to the defendant in the event that the defendant should die or become incapacitated before performing the legal service to the extent of the money advanced. The defendant alleged that at the special instance and request of the plaintiff he had performed legal services of the reasonable value of $5,000; that the note and mortgage was fully paid; that he had had to employ an attorney to defend the action and prayed that plaintiff take nothing by his complaint; and that defendant recover the sum of $1,000 as an attorney's fee.

For a cross-complaint, the defendant alleged that between February 27, 1947, and January 1, 1956, the defendant had performed legal services for the plaintiff and cross-defendant of the reasonable value of $5,000' and he had expended $500

in his behalf in court costs and expenses and prayed judgment in the sum of $5,500.

The reply and answer to the cross-complaint consisted for the most part in denials.

After these pleadings the story unfolded before the trial court.

Briefly summarized from the cold record, and bolstered by a reading of the cross-examination of the plaintiff on rebuttal testimony in which admissions and evasions, observed and heard by the trial judge tell quite a story, the testimony reveals beyond any question that in 1947 there had existed between the plaintiff and the defendant for some ten years not only an attorney-client relationship, but a strong personal friendship as well. During a social call to the defendant's home by the plaintiff, the defendant mentioned to the plaintiff certain pressing financial obligations and the plaintiff offered to advance to the defendant the money which he needed to take care of these obligations, and it was arranged that this money would be repaid by the defendant's legal services. The next morning, defendant insisted upon giving to the plaintiff his note and mortgage to evidence the transaction. The friendship between the parties continued until 1955 during which time the defendant continued to render services to the plaintiff, the value of which services very shortly exceeded the amount of the note and mortgage. At plaintiff's request, no bills were presented for these services. Then in 1955 the plaintiff's friendship for the defendant abruptly ceased, and he secured the note and mortgage from the party with whom he had left them, and for the first time, filed it of record November 18, 1955, shortly before it became outlawed by law. Subsequently suit was commenced on February 24, 1956.

As related before, the court found generally for the defendant. The services of the defendant were testified to in some detail and exhibits in the form of court and office files were introduced. The defendant produced the only testimony as to the reasonableness of the defendant's charges by two

experienced attorneys, and this was not disputed. Of the individual items charged, four of them were rendered in the years 1946 and 1947 and 1951 totalling $3,108.99, which is slightly more than the face amount of the note. The balance of the items were for services in years subsequent to 1952 up to 1955 and amount to $1,505.09.

The appellant specifies six errors. He argues all six alleged ▇ errors under one argument as he says they all relate to substantially the same matter. In our analysis of the case, but one matter must be discussed, i.e., the specification of error that the court should not have received any evidence of services of the defendant rendered more than five years prior to the filing of the action as the claim for services was outlawed by the statute of limitations.

As to this matter, we have heretofore set out the pleadings. First to consider is the affirmative defense of payment by services. As we have also heretofore related, four of the services, at a value which the record demonstrates as reasonable with nothing to the contrary, were rendered very shortly after the note was given under an agreement testified to by the defendant. These services amount to $3,108.99 and are more than the $3,000 due under the note.

The affirmative defense referred to does not plead setoff, recoupment or counterclaim, but just payment. The reply denied payment.

Subsequently, the plaintiff, by written stipulation, amended his reply as follows:

"As a further answer to the cross complaint against the plaintiff, and for a first affirmative defense, the plaintiff alleges as follows:

"1. That the defendant's claim for alleged legal services, court costs and other expenses or a portion thereof in said cross complaint is barred by the provisions of section 93-2603, Revised Codes of Montana, 1947."

It is noted that the statute pleaded is an eight-year statute based on an action upon any contract, obligation, or liability,

founded upon an instrument in writing. It has no application to this case. The pleader must have meant section 93-2604 which is a five-year statute not founded on an instrument in writing. Although we do not predicate this opinion on this point, we call to appellant counsel's attention the rule announced in Reed v. Richardson, 94 Mont. 34, 39, 20 Pac. (2d) 1054, wherein this court said:

"The appellants, by pleading that the affidavit of renewal was not filed in accordance with section 8267 [R.C.M. 1921, now R.C.M. 1947, sec. 52-206], did not thereby invoke the protection of the statute applicable to the debt. 'Where a statute of limitations is pleaded which is not applicable to the cause of action claimed to be barred, the plea is bad, and as a general rule the protection of another statute which is not pleaded can not be invoked.' [Citing authorities.]"

The appellant urges that the case of Francisco v. Francisco, 120 Mont. 468, 191 Pac. (2d) 317, 1 A.L.R. (2d) 625, is controlling. However, in our view that case is distinguishable. First of all in the Francisco case the court's opinion relates it was conceded that the attempted defense was one of recoupment rather than payment, as here. In addition, the Francisco case considered services which had already been rendered prior to the making of the note.

As to the alleged barred claims for services here, the affirmative defense sets them up as payment under an agreement, and thus, since it is not pleaded as a cause of action the statutes of limitations do not apply, they being limitations on actions only and not of defense.

In 1 A.L.R. (2d) 625, an annotation on the Francisco case, supra, at page 648, appears the following statement:

"The rendering of services, advancement of money, or delivery of other thing of value with the understanding that the amount thereof shall be credited on an existing or anticipated indebtedness seems to characterize the services, or other thing of value, as a payment of the time rendered, paid or delivered, and hence not defeated by limitations."

Among the other cases cited by the annotator, in support of the above statement, is the case of Hamlin v. Flick, 130 Wash. 126, 226 Pac. 484, which case, oddly enough, is relied on in the instant appeal by both the appellant and respondent.

We note too that the annotator at page 638 states:

"In Francisco v. Francisco (1948) * * * an action on a note and to foreclose a mortgage securing the same, wherein defendant, as an 'offset', and in 'recoupment', alleged that at the time the note was given plaintiff was indebted to defendant in a certain amount of money loaned and labor performed, the ruling made was that since defendant's claim related to dates, occasions, and transactions other than those which concerned the note sued on it was not in fact a recoupment and being barred by limitations was unavailable. Yet the trial judge apparently had found that there was a tacit understanding that the amount owing to defendant should be credited on the note, *and if such was the case it seems the amount might possibly have been credited, not as an offset, but as a payment not within the statute of limitations.*" Emphasis added.

We have examined the briefs and record in the Francisco case and find it to be a fact that the trial judge did find a tacit understanding as stated above. We find also, however, that certain of the items claimed were, at the time of giving of the note, already barred by the statute.

Returning to the Hamlin v. Flick case, supra, 130 Wash. at page 131, 226 Pac. at page 485, the Washington court had this to say:

"Since, therefore, more than three years elapsed between the time of the statements and the time of the commencement of the plaintiff's action the accounts, merely because they are accounts stated, cannot be offset against the note. Rubin v. Lucerne & Aurelia Crown R. Co., 87 Wash. 198, 151 Pac. 500.

"Passing to the defendants' appeal, we think there is a substantial ground which not only requires the amounts of these statements to be credited on the note, but which requires the reasonable value of the services subsequently performed to be

so credited also. The record is long, and the evidence cannot even be epitomized here, but a careful examination of it has convinced us that there was a mutual understanding between the parties that the reasonable value of the services rendered by Mr. Flick should be credited on the note. This being the understanding, it would be grossly unfair and inequitable to allow the statute of limitations to intervene. Mr. Flick did not claim that the value of his services was greater than the amount of the note, and he could not sue upon the accounts. Without stultifying himself he could not even allege that the value of the services was due and owing him, and had he so alleged it would have been a sufficient defense thereto to show the agreement. The most that he could have done would have been to institute some form of equitable procedure to compel the indorsement of the value of the services on the note, but equity is just as potent in the present action to compel the indorsement as it would have been in a suit instituted at any prior time. By reason of the agreement his rights were relegated to that class of defenses which we have heretofore denominated pure defenses, and have held are not barred by the statute of limitations short of the time the actions to which they are defenses are barred. State ex rel. American Freehold-Land Mtg. Co. of London v. Tanner, 45 Wash. 348, 88 Pac. 321; Buty v. Goldfinch, 74 Wash. 532, 133 Pac. 1057, 46 L.R.A., N.S., 1065, Ann. Cas. 1915A, 604; Buck v. Equitable Life Assurance Society, 96 Wash. 683, 165 Pac. 878.''

The above statements of the Washington court are precisely applicable to the second affirmative defense of the defendant and respondent in this cause, and this fact is not changed by reason of the defendant's having pleaded the same facts as a cross-complaint. Certainly, the fact that the affirmative allegations of the second affirmative defense are also pleaded as a cross-complaint does not render the second affirmative defense a cross-complaint as well.

We think in the instant case, what the Washington court calls a pure defense was pleaded in the form of the affirma-

tive defense of payment by services rendered at a reasonable value under an agreement or understanding made at the time of the note as a part of the same transaction. The statute of limitations does not bar this.

That this holding is correct is borne out by a reading of R.C.M. 1947, sec. 93-3409, which reads as follows:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated, so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

See discussion of identical statute in Cox v. Dixie Power Co., 81 Utah 94, 16 Pac. (2d) 916.

Although counsel for the appellant lays much stress on the fact that the items of service relied upon in the affirmative defense pleading were also plead as a cross-complaint, we fail to see how this would change the character of the affirmative defense from one of payment to one of a counterclaim, since as we have heretofore shown, the value of services which might have otherwise been barred by the statute of limitations in an independent action was $3,108.99, while the value of services not otherwise barred amounted to $1,505.09. The trial court's judgment was in the amount of $1,605. This variation in amount might well be explained by the doctrine of implied findings, in that interest could properly have been allowed and the judgment must be sustained if supported by the evidence viewed in the light of any theory. See State ex rel. Bottomly v. Johnson, 116 Mont. 483, 154 Pac. (2d) 262.

Although the appellant urges error based on the statute of frauds, he does not present argument in his brief on the matter; and, although we have examined this point, we do not deem it of sufficient merit on the record before us to discuss the point and deem it waived.

Certain mathematical discrepancies, between the amounts

of the reasonable value of the services rendered and the trial court's judgment, are in favor of the appellant since the judgment is in fact less than the difference between the note and the services rendered.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY and ANGSTMAN, concur.