No. 91-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JESSALIN DILLING,

Claimant and Appellant,

v.

BUTTREY FOODS,

Employer/Defendant and Respondent.

APPEAL FROM:  Workers' Compensation court,
The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard J. Martin; Alexander, Baucus & Linnell,
P.C., Great Falls, Montana

For Respondent:

Thomas A. Marra; Marra, Wenz, Johnson & Hopkins,
P.C., Great Falls, Montana

Submitted on briefs: August 1, 1991

Decided: December 3, 1991

Filed:  DEC 3 - 1991

FILED

Ed Smith
RK OF SUPREME C
STATE OF MONTA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Claimant and appellant, Jessalin Dilling, appeals an adverse ruling of the Workers' Compensation Court denying her additional wage supplement benefits pursuant to § 39-71-703, MCA (1987).

We reverse.

Claimant raises one issue on appeal which we restate as follows:

Whether the Workers' Compensation Court erred when it included a modified position in claimant's job pool when determining claimant's post-injury earning capacity.

On July 1, 1987, claimant suffered an industrial injury arising out of her employment with Buttrey Foods, a self-insurer. While working as a grocery checker, claimant reached across the counter to pick up two watermelons and injured her back. At the time of the injury, she was earning $6.95 per hour and was a part-time employee working approximately 20 hours per week. Claimant continued to work for an additional three weeks after the accident.

On August 16, 1987, she received a leave of absence for six months, but as a result of financial pressures, she returned to work on October 10, 1987. On October 24, 1987, she ceased working as a grocery clerk because of the physical demands of the job.

Defendant accepted liability for claimant's injury and paid temporary total disability benefits in the amount of $116 for the period of August 16, 1987, until claimant returned to work in

July 1988 as a camera bar clerk. Defendant had modified the camera bar clerk position after being approached to do so by Gerry Loch, a rehabilitation counselor, who suggested that the position be modified to accommodate claimant's limitations. Claimant was to avoid much of the lifting requirements and was allowed to work fewer hours per week than normally required for the position. She worked 25 hours per week, earning $6.95 per hour, which was the same wage as her pre-injury wage. However, it was a higher wage than normally paid to a camera bar clerk.

On May 13, 1989, claimant voluntarily left defendant's employ to pursue a self-employment venture with her husband. She had asked defendant for another leave of absence, but was refused and her position was unilaterally terminated by the defendant. After seven weeks, the self-employment venture proved unsuccessful and was abandoned. In June 1989, she applied for a job with defendant, who refused to hire her.

Claimant then worked as a flag person for a highway construction company in May 1990. She earned $11.95 per hour for approximately two months. Because of the seasonal nature of the work, it was not considered "typically available,'' and was not used by the Workers' Compensation Court to calculate whether she was entitled to wage supplement benefits.

On September 3, 1987, Dr. Thompson diagnosed claimant's condition as a musculoligamentous sprain of the mid-back. On January 11, 1988, Dr. Isackson, an orthopedic surgeon, released

claimant to return to work and advised her to avoid overhead lifting and bending. The doctor concluded claimant could return to work at defendant's store in a position other than as a grocery store clerk. No impairment rating was assigned to claimant.

On April 28, **1988,** Dr. See, a physical medicine and rehabilitation specialist, concluded that claimant had reached maximum healing and a medically stable condition. Although Dr. See did not assign claimant an impairment rating, he did recommend 'chat claimant pursue a different occupation because he did not believe she could continue as a grocery store clerk.

Dan Schara, a vocational counselor, testified that claimant's work history suggested she had light to medium employment. As a result of her injury, she was limited to light duty work. Therefore, she suffered a labor market loss of **46** to **51** percent. Mr. Schara also listed several post-injury jobs as possible employment opportunities. All of these earned between **$4.25** and **$5.00** per hour. Ms. Loch concluded that claimant had a residual job capacity in several areas. These jobs paid from **$3.35** to **$4.95** per hour.

On March **1, 1991,** the hearing examiner issued his findings of fact and conclusions of law and proposed judgment which the Workers' Compensation Court adopted. The Workers' Compensation Court concluded that claimant was not entitled to wage supplement benefits pursuant to § **39-71-703,** MCA **(1987),** primarily because the court included the modified camera bar clerk's position within

4

claimant's job pool. Because her wage at the time of her injury was $6.95 per hour, and her job pool wage was the same, she was not entitled to wage supplement benefits. The court also denied claimant's entitlement to a penalty under § 39-71-2907, MCA (1987), and attorney fees and costs. It is from this order that claimant appeals.

Because claimant's injury occurred on the date the 1987 legislative amendments went into effect, the 1987 statutes apply to this case. Watson v. Seekins (1988), 234 Mont. 309, 312, 763 P.2d 328, 331.

This Court will not overturn a Workers' Compensation Court's finding of facts if they are supported by substantial, credible evidence. Sharkey v. Atlantic Richfield Co. (1989), 238 Mont. 159, 163, 777 P.2d 870, 872. If the question on appeal is a question of law, our only task is to determine whether the Workers' Compensation Court's interpretation of the law is correct. Wassberg v. Anaconda Copper Co. (1985), 215 Mont. 309, 314, 679 P.2d 909, 912. The resolution of this dispute rests upon an interpretation of the law because the facts are not in dispute.

The Workers' Compensation Court correctly concluded that claimant was not entitled to an impairment award because none of her treating physicians had assigned her an impairment rating. Thus, she was entitled only to wage supplement benefits. The Workers' Compensation Court concluded that claimant's job as a camera bar clerk was within her job pool because she was qualified,

the position was "typically available," and it was consistent with her age, education, vocational experience, and aptitude. We disagree.

In order to receive wage supplement benefits, § 39-71-703, MCA (1987), provides:

> (1) The benefits available for permanent partial disability are impairment awards and wage supplements. A worker who has reached maximum healing and is not eligible for permanent total disability benefits but who has a medically determined physical restriction as a result of a work-related injury may be eligible for an impairment award and wage supplement benefits as follows:
>
> . . . .
>
> (b) The following procedure must be followed for a wage supplement:
> (i) A worker must be compensated in weekly benefits equal to *66* 2/3% of the difference between the worker's actual wages received at the time of the injury and the wages the worker is qualified to earn in the worker's job pool, subject to a maximum compensation rate of one-half the state's average weekly wage at the time of injury.

The legislature defined "worker's job pool" as "those jobs typically available for which the worker is qualified . . . ." Section 39-71-1011(7)(a), MCA (1987). The worker's qualifications must be consistent with the worker's age, education, vocational experience, and aptitude, and the job must be compatible with the worker's physical capabilities and limitations. Section 39-71-1011(7)(a), MCA (1987). The statutes do not discuss whether modified employment should be included in a workers' job pool.

We adopt the Workers' Compensation Court's definition of what constitutes jobs that are "typically available."

> [T]here is labor market documentation of positions, not necessarily openings, for which an injured worker has marketable skills and access to within his or her job pool. The mere existence of the positions are not enough, however, if there are positions for which the claimant has the skills and physical capabilities to perform, those positions are typically available.

Roby v. A. Basil Canavan (1990), W.C.C. No. 785.

The Workers' Compensation Court must analyze a claimant's physical ability to perform the job, and claimant's ability to compete for the job, in order to conclude that any job is "typically available."

The record indicates that claimant was not qualified to perform the camera bar clerk position unless certain modifications were implemented. This "modified" job cannot accurately reflect claimant's post-injury earning capacity because it would not be a "typically available" job to her. The position should not be included in her job pool because the only employer providing the modified position is the defendant.

> Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and, for purposes of determining permanent disability are to be discounted accordingly. The same is true if the injured man's friends help him, or if he manages to continue only by delegating his more onerous tasks to a helper, or <u>if the work for which claimant is paid is 'made work' or sheltered work</u>. [Emphasis added.]

Larson's Workers' Compensation Desk Edition, Section 57.34 (1989).

In addition, the record reflects that part of the wages claimant received from the defendant were gratuitous in nature. Claimant testified that the wage she received as a camera bar clerk

7

was higher than that normally paid to a camera bar clerk without modifications. Her testimony was corroborated with evidence provided by Gerry Loch which shows that the usual compensation received for a camera bar clerk ranged from $ **3.36** to **$6.03** per hour as a part-time position, to **$3.76** to **$6.25** per hour as a full-time position. Because of the modification of the camera bar clerk position and the inflated wage paid to claimant, the Workers' Compensation Court should not have included the modified camera bar clerk position in claimant's job pool.

This case is reversed and remanded for the Workers' Compensation Court to determine claimant's wage supplement benefits based upon the difference between claimant's actual wages received at the time of the injury, and the wages claimant is qualified to earn in her job pool, excluding the modified camera bar clerk position.

Reversed and remanded.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

8