No. 92-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

JESS BEERY, Conservator and Guardian
for Danny Beery, an incapacitated person,

       Petitioner and Appellant,

   -vs-

GRACE DRILLING,

       Employer,

  and

CNA INSURANCE COMPANY,

       Defendant and Respondent.

FILED

JUN 26 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Montana Workers' Compensation Court,
              The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Gene R. Jarussi; Jarussi & Bishop
           Billings, Montana

       For Respondent:

           Todd A. Hammer; Warden, Christiansen,
           Johnson & Berg, Kalispell, Montana

                    Submitted on Briefs:  April 1, 1993

                           Decided:  August 26, 1993

Filed:

_____
            Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment entered in the Workers' Compensation Court, the Honorable Timothy W. Reardon presiding. The Workers' Compensation Court determined that the claimant, Danny Beery (Beery), was not entitled to receive domiciliary care benefits, nor was he entitled to his costs, attorney's fees, or a penalty. We affirm.

In his brief, Beery raises issues concerning equitable estoppel, waiver, breach of contract, judicial estoppel, attorney's fees and costs, and statutory penalties. For reasons discussed below, however, the only issue before this Court is whether the Workers' Compensation Court erred in concluding that CNA was not equitably estopped from contesting Beery's entitlement to domiciliary care benefits.

On November 4, 1984, Beery suffered an industrial injury while working for Grace Drilling. He fell approximately twenty-five feet from an oil rig, suffering multiple fractures to his left leg, first, second and third degree burns, and a closed head injury that initially went undetected. Respondent CNA Insurance Company (CNA) served as Grace Drilling's insurer under Plan II of the Workers' Compensation Act. Beery is currently receiving permanent total disability benefits. Those benefits are not contested or at issue here.

In February 1989, CNA petitioned the district court to have a limited guardian and conservator appointed to represent Beery and manage his affairs regarding his workers' compensation claim. The

2

district court appointed Beery's son, Jess, for that purpose.

Because Beery does not contest the Workers' Compensation Court's ultimate determination that he is not entitled to domiciliary care benefits under the five part test adopted in Carlson v. Cain (1985), 216 Mont. 129, 700 P.2d 607, an extensive discussion of the medical evidence is not necessary. A summary of the three medical panel evaluations Beery underwent provides sufficient background for an understanding of this matter.

In May 1987, the Yellowstone Valley Medical Evaluation Panel found that Beery demonstrated significant organic brain syndrome and that his intellect, thinking ability, judgment, affect, and potential were "markedly impaired." The panel expressed concerns about Beery's competency to manage his own affairs but found him self-sufficient. It suggested psychological retesting in six to twelve months.

In November 1987, the same panel found that there had been "no significant change" in the test results from the May evaluation; therefore, the panel anticipated that Beery's condition had stabilized. The panel felt that although Beery did not require constant supervision he would need "at least once daily assistance and supervision." It did not feel that he needed an attendant to help him perform independently the activities of daily living such as bathing, dressing, feeding and meeting basic bodily needs. The panel did feel that Beery would need assistance in handling his financial and legal affairs.

At CNA's request, a Kalispell medical panel evaluated Beery in

3

April 1991. The members of this panel conducted their own evaluations and reviewed Beery's extensive medical records and the results of the two previous medical panel evaluations. They also reviewed surveillance reports and video tapes of Beery that showed him driving his truck on numerous occasions and operating a tractor on his farm. The panel concluded that Beery did not need a personal attendant or domiciliary care.

Prior to receiving the Kalispell report, CNA had been paying Beery domiciliary care benefits. In a letter dated September 25, 1987, James Putman, CNA's adjuster, stated that CNA would initiate payments "pending further evaluation as to the necessity and extent of your client's domiciliary requirements . . . [and] as a compromise in an effort to avoid premature litigation . . . ." In a letter dated March 17, 1988, Putman agreed to pay $616 per week for Beery's past care and to continue at that rate in the future.

On April 30, 1988, the parties entered an agreement entitled "Compromise, Settlement And Release Of Claim For Payment For Domiciliary Care Previously Provided." That settlement covered the period from November 24, 1984 through April 16, 1988. The parties stated that they desired to "resolv[e] such claim without further cost, time, litigation or expense," and the settlement was made "without any admissions on anyone's part."

After entering that settlement, CNA continued to pay benefits at the rate of $616 per week. Then, based on the report of the Kalispell panel, CNA terminated all payments for domiciliary care on August 12, 1991.

4

Beery responded to the termination of benefits by petitioning the Workers' Compensation Court for a hearing, praying that domiciliary care benefits be reinstated. The parties stated the issues in the pretrial order as follows:

1. Whether the claimant has been since August 12, 1991, and currently is entitled to receive domiciliary care paid for by the Defendant?

2. Is the claimant entitled to a penalty, reasonable costs and attorney fees pursuant to Montana law?

The parties' "Statement of Contentions" in the pretrial order merely reiterated the issues stated above. Beery raised the issues of waiver, breach of contract, and judicial estoppel for the first time in his proposed findings of fact, conclusions of law and judgment. Beery raised and briefed the issue of equitable estoppel for the first time in his reply to CNA's proposed findings, conclusions, and judgment.

The Workers' Compensation Court concluded that Beery had failed to support his need for domiciliary care by medical evidence as required by Carlson. The court also concluded that CNA was not equitably estopped from terminating benefits.

In reviewing a decision of the Workers' Compensation Court, we determine whether substantial credible evidence supports its findings. Richardson v. Columbia Falls Aluminum Co. (1991), 248 Mont. 41, 43, 808 P.2d 500, 501. In reviewing conclusions of law we determine whether the Workers' Compensation Court's interpretation of the law is correct. Stanley Structures v. Scribner (1992), 253 Mont. 236, 239, 833 P.2d 166, 169.

The Workers' Compensation Court did not address the issues of

5

waiver, breach of contract, or judicial estoppel, presumably because these were not raised in the petition or the pretrial order. Under Rule 16(e), M.R.Civ.P., the pretrial order "control[s] the subsequent course of the action unless modified by a subsequent order." The pretrial order "should be liberally construed to permit any issues at trial that are 'embraced within its language.'" Bell v. Richards (1987), 228 Mont. 215, 217, 741 P.2d 788, 790 (citations omitted). However, the limited statement of issues in the pretrial order in this case cannot be construed so liberally as to embrace the issues of waiver, judicial estoppel and breach of contract. The threshold question in determining entitlement to domiciliary care benefits is whether the five part test of Carlson is met. Furthermore, we said in Montana Deaconess Medical Center v. Doherty (1990), 241 Mont. 243, 246, 786 P.2d 669, 671, that "[w]e may on appeal review only those issues decided by the District Court . . . ."

We distinguish this case from Akhtar v. Van De Wetering (1982), 197 Mont. 205, 642 P.2d 149, where we found that there was sufficient indication that due process was an issue at the trial level to consider it on appeal. There, we relied on the fact that due process was referred to extensively in the appellant's trial brief and proposed conclusions of law and the district court made a specific finding regarding due process. 642 P.2d at 152. In the present case, Beery did not argue these issues before the hearing, but only interjected them into his proposed findings and conclusions. As the Workers' Compensation Court did not address

6

these issues, we will not address them either.

Beery does not contest the Workers' Compensation Court's conclusion that he failed to meet the five part test of Carlson for entitlement to domiciliary care benefits. Because he did not raise or argue this issue in his brief, the issue is deemed waived and we need not address it. Teesdale v. Anschutz Drilling Co. (1960), 138 Mont. 427, 431, 357 P.2d 4, 7; Hagerty v. Hall (1959), 135 Mont. 276, 283, 340 P.2d 147, 151. See also Schaubel v. Iversen (Mont. 1993), 848 P.2d 489, 50 St.Rep. 213 (issue of whether district court erred in determining that appellants had failed to establish prima facia case of negligence was waived because not raised or argued in their brief). "This Court will not endeavor to review a matter when appellant has directed no argument toward it." Sands v. Nestegard (1982), 198 Mont. 421, 428, 646 P.2d 1189, 1193.

Furthermore, because we hold that CNA properly terminated domiciliary care benefits, Beery is not entitled to attorney's fees, costs or a penalty. See §§ 39-71-611 and 39-71-2907, MCA (1983).

## Equitable Estoppel

Beery raised and briefed the issue of equitable estoppel in his reply to CNA's proposed findings, conclusions and judgment. He explained that he raised the issue then for the first time because "it was not until receipt of the Defendant's Proposed Findings, Conclusions, and Judgment that the Claimant realized that the Defendant was going to ask this Court to relieve it from the obligation to pay for domiciliary care which it willingly undertook

7

in 1988 by revealing that it really didn't mean what it said when the contract was negotiated."

The Workers' Compensation Court addressed the issue of equitable estoppel, concluding that Beery failed to meet the first of six elements required for the doctrine to apply. We have stated the elements as follows:

"1. There must be conduct--acts, language, or silence--amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . . 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse. . . ."

Mellem v. Kalispell Laundry & Dry Cleaners (1989), 237 Mont. 439, 442, 774 P.2d 390, 392 (quoting Davis v. Jones (1983), 203 Mont. 464, 467, 661 P.2d 859, 861). We reaffirmed and readopted these as the six essential elements in Dagel v. City of Great Falls (1991), 250 Mont. 224, 819 P.2d 186. However, "[e]stoppel is not favored and will only be sustained upon clear and convincing evidence." Dagel, 819 P.2d at 193 (quoting Kenneth D. Collins Agency v. Hagerott (1984), 211 Mont. 303, 310, 684 P.2d 487, 490).

We also pointed out in Dagel that § 26-1-601, MCA, should be considered in an equitable estoppel case. 819 P.2d at 193. That statute provides:

8

**List of conclusive presumptions.** The following presumptions are conclusive:

(1) the truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act, or omission, whenever he has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief[.]

In the present case, CNA's adjuster, Putman, sent a letter to Beery's lawyer on January 7, 1988, stating among other things, "For the record, the insurer does not contest your client's entitlement to domiciliary care, the full extent and value of which is yet to be determined." Beery relies solely on this statement to argue that "it must be conclusively presumed that Danny is entitled to compensated domiciliary care." We disagree. The statement is qualified as to both extent and value. CNA made no representation that Beery would always be entitled to domiciliary care benefits. The extent of care Beery required certainly could change over time. The medical evidence from the Kalispell panel was that Beery did not require domiciliary care in April of 1991. Therefore, this statement did not establish conclusively that Beery was and would always be entitled to domiciliary care. This is distinguishable from Dagel where the defendant made an affirmative, unqualified statement that the plaintiff was not covered by a contract or grievance procedure. 819 P.2d at 188.

As for equitable estoppel, the Workers' Compensation Court found that Beery failed to meet the first of the six elements--a representation or concealment of material fact. The Workers' Compensation Court reviewed the parties' entire correspondence,

9

concluding that it showed CNA's reservations about Beery's entitlement to domiciliary care benefits.

Specifically, the court relied on the document dated April 30, 1988, entitled "Compromise, Settlement And Release Of Claim For Payment For Domiciliary Care Previously Provided." In that document the parties compromised and settled Beery's claim for domiciliary care for the period November 24, 1984, to April 16, 1988. They acknowledged that the purpose of the agreement was to resolve any claim Beery had for domiciliary care during that period to avoid further cost, time, litigation, or expense. They also stated that it was made "without any admissions on anyone's part." Based on this, the Workers' Compensation Court concluded that Beery could not argue that he was never advised that CNA acknowledged his entitlement to domiciliary care only for the purpose of settlement and to avoid litigation.

Beery argues to this Court that the language in the April 1988 settlement referred only to the specific time period stated therein--November 24, 1984 to April 16, 1988--and no other. However, it was entered into three months after the January 10, 1988, letter on which Beery solely relies and covered any benefits he received during that period. The fact that those three months of payments were made only in the spirit of compromise and "without any admissions" supports the Workers' Compensation Court's findings and conclusions that no representation or concealment occurred.

The Workers' Compensation Court also concluded that the fact that the document of April 16 did not mention domiciliary care

10

after that date could not be construed to mean that CNA admitted Beery was entitled to benefits after that date.

The correspondence between the parties indicates CNA's reservations about Beery's need for domiciliary care. It also indicates CNA's willingness to initiate and pay benefits without admitting liability for the reasons stated above. In the September 25, 1987, letter to Beery's counsel indicating that CNA would initiate benefits, Putman stated:

> [T]his correspondence will serve to confirm the insurer's agreement to initiate biweekly domiciliary payments . . . pending further evaluation as to the necessity and extent of your client's domiciliary requirements. This agreement is intended as a compromise in an effort to avoid premature litigation and is not to be construed as an admission of liability [or] waiver of any future rights of defense. . . . [I]t is my understanding that you agree that the payment of these benefits are in lieu of further investigation of your client's cognitive impairment and the extent of cognitive deficit through further medical panel evaluation . . . .

After receiving the November 1987 medical panel report, Putman sent Beery's counsel a letter on December 10, 1987, stating:

> In addressing your concerns regarding the issue of your domiciliary care, I will remain flexible on this issue as well. However, prior to any final determinations in this regard, I believe it would be appropriate to see what changes result from the recommended treatment.

To this point, CNA had made no representation or concealed anything from Beery. The January 7, 1988, letter on which Beery relies followed. In that letter, Putman prefaced the specific statement Beery relies on by stating, "In conclusion, my correspondence of December 10, 1987 clearly references the insure[r]'s position regarding the domiciliary care issue."

The statement Beery relies on cannot be read in a vacuum. It

11

must be read in light of the other correspondence between the parties and the agreement of April 16, 1988. It must also be read in light of the prefacing statement and the qualifying language in the statement itself. When read in this manner, it does not amount to the "express[ ] represent[ation], without qualification" that Beery argues CNA made.

Furthermore, even if the first element of equitable estoppel were satisfied, Beery could not satisfy the sixth element, which requires that he be put in a worse position than he would have been had there not been a representation or concealment. The Workers' Compensation Court specifically concluded that Beery failed to satisfy the requirements that 1) the preponderance of credible medical evidence demonstrate a need for home nursing care, with a description of that care; 2) the services be performed under the direction of a physician; and 3) the services be of the type normally rendered by trained attendants and not within the scope of normal household duties. Beery argues that because he relied on Putman's statement he made no further attempt after January 1988 to establish the five elements of the Carlson test.

However, Beery had a full opportunity to develop this evidence for the hearing. The record before the Workers' Compensation Court contained the depositions of Beery's wife and two sons and the depositions of some of the doctors from the medical panels that evaluated Beery. It also contained the extensive medical records and reports and the surveillance tapes produced by the insurer's investigator. The Workers' Compensation Court concluded that the

12

evidence showed Beery was not entitled to domiciliary care. Because he had full opportunity before the hearing to develop his case to show that domiciliary care was medically necessary, Beery cannot claim he was put in a worse position than he would have been. See Berglund and Berglund, Inc. v. Contributions Bureau (1990), 241 Mont. 49, 784 P.2d 933 (equitable estoppel not applicable where plaintiff could not show by clear and convincing evidence that he relied on misrepresentation to his detriment).

We hold that the Workers' Compensation Court correctly concluded that CNA was not equitably estopped from contesting Berry's entitlement to domiciliary care benefits.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

August 26, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gene R. Jarussi
Jarussi & Bishop
P.O. Box 3353
Billings, MT 59103


Todd A. Hammer
Warden, Christiansen, Johnson & Berg
P.O. Box 3038
Kalispell, MT 59903-3038

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy