No. 99-035

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 76

299 Mont. 127

998 P. 2d 156

DARCI SELLEY,

Petitioner and Appellant,

v.

LIBERTY NORTHWEST

INSURANCE CORPORATION,

Respondent and Respondent/Insurer for

TURN OF THE CENTURY, INC.,

Employer.

APPEAL FROM: Workers' Compensation Court

State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

**For Appellant:**

Don Edgar Burris, Billings, Montana

**For Respondent:**

Larry W. Jones, Liberty Northwest Insurance Corporation, Missoula, Montana

_____

Submitted on Briefs: September 2, 1999

Decided: March 23, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1.From the Decision and Judgment of the Workers' Compensation Court (WCC), State of Montana, Darci Selley (Selley) appeals. The WCC held that Liberty Northwest Insurance Corporation (Liberty) was not estopped from refusing to recognize and reimburse Selley's treating physician notwithstanding the fact that Liberty had been reimbursing that physician for a period of two years. We reverse and remand.

¶2.The dispositive question on appeal is whether the WCC erred in holding that Liberty was not estopped from asserting § 39-71-116(30), MCA (1993), as a defense?

Factual and Procedural Background

¶3.This case was submitted to the WCC for decision based on a stipulated set of uncontested facts and exhibits which reveal the following. On January 7, 1995, Selley was injured while working for Turn of the Century, Inc., which was insured at that time by Liberty. Upon submission of Selley's claim, Liberty accepted liability and began to pay both wage loss and medical benefits. When her claim was approved by Liberty, Selley selected Richard A. Nelson, M.D. (Dr. Nelson), a neurology and psychiatry specialist, as her treating physician. Liberty then fully reimbursed Dr. Nelson for his care and treatment

of Selley through the first quarter of 1997. Liberty's claims examiner, Jim Belknap, first learned on January 9, 1997, that Dr. Nelson does not have admitting privileges at any hospital near his medical practice.

¶4.Up until approximately seven years prior to this case, Dr. Nelson had admitting privileges at both St. Vincent Hospital and Deaconess Hospital in Billings. However, at that time, he resigned his privileges at both hospitals because he had moved his residence to a location near Columbus, Montana. Columbus lies approximately fifty miles, one way, from his Billings office. Because both hospitals required that a doctor reside within a prescribed number of miles of the hospital or be able to reach it within a specified time-limit, Dr. Nelson's new residence precluded him from meeting these requirements. Therefore, he resigned.

¶5.Upon discovering in 1997 that Dr. Nelson did not have admitting privileges at any hospital near his practice, Liberty provided notice to Selley that it would refuse further reimbursement to Dr. Nelson on the basis that he did not qualify as Selley's "treating physician" pursuant to § 39-71-116, MCA. Liberty's refusal affected only prospective reimbursement of Dr. Nelson, and Liberty did not refuse payment of any of Dr. Nelson's bills incurred prior to its notice of refusal.

## Discussion

¶6.Did the WCC err in concluding that Liberty was not estopped from refusing Selley further coverage because Dr. Nelson does not qualify as a treating physician under § 39-71-116(30), MCA (1993)?

¶7.We review a workers' compensation decision to determine whether there is substantial evidence to support the court's findings of fact. Houts v. Kare-Mor, Inc. (1993), 257 Mont. 65, 68, 847 P.2d 701, 703. Regarding questions of law, this Court must determine whether the Workers' Compensation Court's interpretation of the law is correct. Dilling v. Buttrey Foods (1991), 251 Mont. 286, 289, 825 P.2d 1193, 1195. Since the facts are not in dispute, the resolution of this appeal turns upon an interpretation of the law.

¶8.The disputed statute reads in relevant part:

(30) "Treating physician" means a person who is primarily responsible for the treatment of a worker's compensable injury and is:

(a) a physician licensed by the state of Montana under Title 37, chapter 3, and has <u>admitting privileges to practice in one or more hospitals, if any, in the area where the physician is located</u> . . . . [Emphasis added.]

Section 39-71-116(30), MCA (1993).

¶9.As a general matter, estoppel arises when a party through its acts, conduct, or acquiescence, has caused another party in good faith to change its position for the worse. Smith v. Krutar (1969), 153 Mont. 325, 332, 457 P.2d 459, 463. The doctrine of equitable estoppel is grounded in both statute and case law. By statute, the following presumption is deemed conclusive:

the truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act, or omission, whenever he [or she] has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief . . . .

Section 26-1-601(1), MCA.

¶10.Furthermore, we have held that six elements are necessary in order to establish an equitable estoppel claim: (1) the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) the party estopped must have knowledge of these facts at the time of the representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to that party; (3) the truth concerning these facts must be unknown to the other party at the time it was acted upon; (4) the conduct must be done with the intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party and lead that party to act; and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse. <u>See</u> Dagel v. City of Great Falls (1991), 250 Mont. 224, 234-35, 819 P.2d 186, 192-93; Elk Park Ranch, Inc. v. Park County (1997), 282 Mont. 154, 165, 935 P.2d 1131, 1137-38. A party must establish all six elements before the doctrine can be invoked. Billings Post No. 1634 v. Montana Dep't of Revenue (1997), 284 Mont. 84, 90, 943 P.2d 517, 520. Equitable estoppel must be established by clear and convincing evidence. Beery v. Grace Drilling (1993), 260 Mont. 157, 163, 859 P.2d 429, 433.

¶11.The doctrine of equitable estoppel is designed to prevent one party from unconscionably taking advantage of a wrong while asserting a strict legal right, and will be invoked where "justice, honesty, and fair dealing" are promoted. In re Marriage of K.E. V. (1994), 267 Mont. 323, 331, 883 P.2d 1246, 1251. At this point, it is necessary to address Liberty's view that the doctrine of equitable estoppel has no application to the facts of this case because it engaged in no "wrongful conduct." The WCC took a similar position:

The doctrine of equitable estoppel precludes a party from profiting from its wrong . . . . Even without consideration of the specific elements of the doctrine, [Selley] has failed to demonstrate any wrong by Liberty. At best she has demonstrated that Liberty belatedly learned that Dr. Nelson did not have admitting privileges and therefor [sic] did not satisfy the definition of a treating physician.

¶12.Classically, the function of the doctrine of equitable estoppel is the prevention of fraud, actual or constructive. See 28 Am.Jur.2d Estoppel and Waiver § 28, at 630 (1966); 2 Joseph Story, Commentaries on Equity Jurisprudence § 1543, at 780 (Jairus W. Perry ed., rev.12th ed. 1984). However, this does not imply that the party sought to be estopped must have possessed an actual intent to deceive, defraud or mislead the other party at the inception of the transaction. Indeed, "[t]he fraud may, and frequently does, consist in the subsequent attempt to controvert the representation and to get rid of its effects, and thus to injure the one who has relied on it." 28 Am.Jur.2d Estoppel and Waiver § 43, at 651 (1966).

¶13.Under modern usage, the meaning of "fraud" upon which an equitable estoppel action is premised is that it would be unconscionable or inequitable to allow the party sought to be estopped to repudiate or set up claims inconsistent with its prior conduct and, thus, to commit "a fraud upon the rights of the person benefited by the estoppel." 3 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 803, at 185-86 (Spencer W. Symons ed., 5th ed. 1941). To do so would permit a fraudulent "purpose" or "result" to occur which would be repugnant to equity. See 28 Am.Jur.2d Estoppel and Waiver § 43, at 651 (1966). Therefore, when comparing the many permutations of equitable estoppel, it has been said that the doctrine rests upon the following general principle: When one of two innocent persons--that is, persons each guiltless of an intentional, moral wrong--must suffer a loss, it must be borne by that one of them who by his [or her] conduct--acts or omissions--has rendered the injury possible.

3 Pomeroy, <u>Equity Jurisprudence</u> § 803, at 187.

¶14. Today, we apply the doctrine of equitable estoppel to prevent an inequitable result. We conclude, as analyzed below, that Selley has established an equitable estoppel claim and, therefore, that Liberty is estopped from asserting § 39-71-116(30), MCA (1993), as a defense to reimbursing Dr. Nelson. We address each of the six elements in turn.

## 1. Representation or Concealment of Material Fact

¶15. The WCC held that Liberty's reimbursement of Dr. Nelson for a period of two years "did not amount to a representation or concealment" of material fact. Likewise, Liberty contends on appeal that its conduct in reimbursing Dr. Nelson neither concealed any material facts nor made any "representation about the future." We disagree.

¶16. The record is clear that Liberty had knowledge that Selley had selected Dr. Nelson as her treating physician and that Dr. Nelson was acting in that capacity. After two years of steadily reimbursing Dr. Nelson without objection, it was entirely reasonable for Selley to assume that Liberty would continue to regard Dr. Nelson as her treating physician and, in accord with that status, would continue to reimburse him for his medical treatment of Selley.

¶17. The doctrine of equitable estoppel is frequently invoked where, as here, it would be unconscionable to permit a party to maintain a position inconsistent with one in which it, or those by whose acts it is bound, has acquiesced. <u>See</u> 28 Am.Jur.2d <u>Estoppel and Waiver</u> § 57, at 673-74 (1966). While Liberty's conduct may not amount to concealment of a material fact, we determine that Liberty's silence and acquiescence for two full years amounts to a representation by Liberty that Dr. Nelson was considered an appropriate treating physician for Selley's work-related injuries. Since, as discussed below, Liberty should have known that Dr. Nelson did not satisfy the provisions of § 39-71-116(30), MCA (1993), Liberty's conduct constituted a misrepresentation of material fact. Thus, the first element is satisfied.

## 2. Actual or Constructive Knowledge

¶18. Regarding the second element of equitable estoppel, the WCC concluded that Selley had "failed to establish" that Liberty knew or should have known that "Dr. Nelson did not meet the treating physician definition." However, we ascertain that the circumstances are

such that knowledge of Dr. Nelson's treating physician status necessarily must be imputed to Liberty. As Selley argues, Liberty had exclusive control over paying doctors. Although Liberty claims that there is no reason "why or how" it should know that Dr. Nelson has admitting privileges, Liberty is clearly in a better position than a claimant to determine whether a particular physician has "admitting privileges" as defined in § 39-71-116(30), MCA (1993).

¶19.The disputed statutory subsection was enacted in 1993 as part of SB 347, a bill introduced "to attain better medical cost containment" through instituting a "managed care" insurance system. The purpose of SB 347 was, in part, to provide insurers with tighter controls over compensation for medical services under Montana's workers' compensation insurance system, thereby resulting in savings to the insurers. See generally Medical Cost Containment: Hearing on SB 347 Before the Senate Comm. on Labor and Employment Relations, 53rd Legisl. (Feb. 16, 1993); Hearing on SB 347 Before the House Comm. on Labor and Employment Relations, 53rd Legisl. (March 16, 1993). It begs incredulity to even suggest that Liberty and its agents were unaware of major changes in Montana's workers' compensation insurance system which were designed in large part to benefit insurers by providing tighter medical cost containment mechanisms, including the "treating physician" provisions of § 39-71-116(30), MCA (1993).

¶20.Nor would it be fair to impose a duty or obligation upon an injured claimant, pursuant to the statute, to determine whether the physician which he or she selects for treatment qualifies as an appropriate treating physician. Since the statute is designed to provide insurers with tighter controls over required medical compensation for work-related injuries, any obligation to determine whether a physician selected by a claimant qualifies as a "treating physician" under § 39-71-116(30), MCA (1993), clearly should be on the shoulders of the insurer. The second element of equitable estoppel is satisfied because Liberty should have known of the treating physician provisions of the statute and should have discovered that Dr. Nelson did not qualify as such. The failure to do so cannot be excused on the basis of Liberty's alleged ignorance of the law.

### 3. Truth Unknown to the Other Party

¶21.The WCC determined that Selley did not meet the third element of equitable estoppel on the basis of the following authority:

[E]quitable estoppel also requires that the complaining party must have no knowledge of

the truth of the facts which it claims were misrepresented to it. We have held, however, that the complaining party must lack not only the actual knowledge itself, but also lack "a readily available means of knowledge as to the true facts." Moreover, the doctrine of equitable estoppel will not be applied where both parties have the same opportunity to determine the truth of the facts at issue.

Elk Park Ranch, 282 Mont. at 166, 935 P.2d at 1138 (citation omitted). Thus, the WCC held that "there is no evidence that [Selley] lacked equal means to ascertain whether Dr. Nelson had hospital privileges."

¶22.In light of our conclusion under the second element, we obviously disagree with the WCC's conclusion. Furthermore, the Elk Park Ranch decision is plainly distinguishable. There, both parties were represented by legal counsel concerning the validity of certain real estate transactions. When one party claimed equitable estoppel, we declined to invoke the doctrine because both parties, being represented by counsel, "were equally able to perform the necessary legal analysis" to determine the validity of the transactions. Elk Park Ranch, 282 Mont. at 167, 935 P.2d at 1138. While it may be true, as the WCC reasoned, that Selley simply could have asked Dr. Nelson whether he qualified as a treating physician, the same could be said of Liberty. More importantly, as determined under the second element above, insurers are clearly in a better position to be aware of changes in the law circumscribing the requirements of a treating physician.

¶23.In contrast to the situation presented in Elk Park Ranch, the parties in this appeal cannot be said to be "equally able" to determine the truth of whether a particular physician satisfies the legal requirements of § 39-71-116(30), MCA (1993). Thus, we agree with Selley that the burden should not be on the claimant to inquire at the outset as to whether a physician is appropriately qualified, nor should such a burden be imposed where, as here, the insurer has failed to object to the claimant's choice of a treating physician for a period of two years. Again, it would be unfair to place the burden on an injured employee who is seeking medical treatment to determine whether a particular physician qualifies as a treating physician. Indeed, it is reasonable to assume that insurers concerned with effective medical cost containment would provide assistance to the claimant in determining whether a selected physician was so qualified. We therefore determine that the third element of equitable estoppel is met. The actual truth of Dr. Nelson's treating physician status was unknown to Selley, nor can she be said to have had the same opportunity as Liberty to determine the truth of that matter.

## 4. Intent or Expectation that Conduct Will be Acted Upon

¶24. The WCC did not address this element. Because we have already determined that Liberty should have known that Dr. Nelson did not qualify as a treating physician, we further conclude that Liberty's approval and payment of Dr. Nelson for a period of two years was done under circumstances showing that it would be both natural and probable for Selley to believe that Dr. Nelson was appropriately qualified as a treating physician, and that she would be able to complete her course of treatment with Dr. Nelson while continuing to receive compensation from Liberty.

## 5. Conduct Relied Upon by Other Party

¶25. Although not addressed by the WCC, we conclude that the fifth element of equitable estoppel is also fulfilled. There is no doubt that Selley relied upon Liberty's steady reimbursement for a period of two years in establishing a solid physician-patient relationship with Dr. Nelson. Dr. Nelson has a good understanding of Selley's medical history and present needs, and it appears that the treatment of Selley's work-related injuries has progressed favorably under Dr. Nelson's guidance. Hence, there is no reason why Selley should not be entitled to finish her treatment under the guidance of a physician whom she trusts.

## 6. Change of Position for the Worse

¶26. As argued below, Liberty focuses upon the final element of equitable estoppel and asserts that, "most importantly," it cannot be met by Selley. In particular, Liberty contends that Selley has not presented any evidence that Dr. Nelson is "uniquely qualified," nor has she presented any "medical evidence" that requiring a change of physicians would interfere with or delay her recovery. This might be a different case had Liberty intervened in the relationship between Dr. Nelson and Selley at a much earlier point in time. As alluded to above, however, permitting Selley to continue seeing Dr. Nelson for a period of two years without objection allowed Selley to establish a well-grounded physician-patient relationship. From the perspective of an injured person, the physician-patient association is a highly personal relationship of trust and confidence that may be as important to the healing process as any other factor.

¶27. As Selley replied to Liberty's interrogatories at trial:

I personally feel if [Liberty] would look at Dr. Nelson's diagnoses they would see he has been 99.99% right and that he has tried to get me the proper medical treatment. Dr. Nelson has been at the forefront of accurate diagnoses and proper treatment for my condition . . . . All the doctors that [Liberty] has had me see have tried to sweep my injuries under the carpet. Dr. Nelson knows my past and present medical condition better than any doctor I've seen.

¶28. The final element of equitable estoppel is satisfied. Requiring Selley to change physicians in the middle of her course of treatment, which is progressing favorably under Dr. Nelson's guidance, would result in Selley effectively changing her position for the worse. Selley would suffer a loss by being forced to forego her relationship with Dr. Nelson at this point in time.

¶29. In light of the foregoing analysis, we hold that the WCC erred in determining that Liberty was not estopped from asserting § 39-71-116(30), MCA (1993), as a defense to Selley's claim.

¶30. Reversed and remanded.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER