No. 88-86

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

DAVID ERICKSON, an individual,
and DOREEN VAIR, an individual,
f/d/b/a STARHAVEN RANCH, LTD.,
a Montana corporation,
             Plaintiffs and Appellants,
      -vs-

BURTON CROFT, an individual, SHIRLEY
CROFT, an individual, LARRY RULE,
an individual f/d/b/a Rule Realty;
RONALD SCHOEN, an individual; JOHN
WARREN, an individual, SCHULTZ, DAVIS
& WARREN, a partnership,
             Defendants and Respondents.

APPEAL FROM:  District Court of the Fifth Judicial District,
              In and for the County of Beaverhead,
              The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          O'Brien & Conrad; James P. O'Brien, Missoula, Montana

      For Respondent:

          Hooks & Budewitz; Patrick F. Hooks, Townsend, Montana
          Garlington, Lohn & Robinson; Sherman V. Lohn, Missoula,
          Montana

Submitted on Briefs:  June 9, 1988

Decided:  August 5, 1988

Filed:  AUG 5 1988

_____
            Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

David Erickson (Erickson) and Starhaven Ranch (Starhaven) appeal a Fifth Judicial District Court, Beaverhead County, grant of summary judgment to defendants real estate broker Larry Rule (Rule), attorney John Warren (Warren), and the Dillon, Montana law firm of Schultz, Davis & Warren. We affirm.

This case is related to the litigation involved in Erickson v. First National Bank of Minneapolis (Mont. 1985), 697 P.2d 1332, 42 St.Rep. 423. In Erickson we determined that the First National Bank of Minneapolis had properly quieted title as against Erickson to certain ranch property located in Beaverhead County. Erickson, d/b/a Starhaven Ranch, Ltd., purchased the property on a contract for deed on January 15, 1981 from Burton and Shirley Croft who had in turn purchased the property on a contract for deed from Herman and Patricia Clarno in 1976. The Crofts borrowed money from the First Bank of Minneapolis (the Bank) and, on August 5, 1980, assigned their purchaser's interest in the Clarno-Croft contract for deed to the Bank as collateral security. The Crofts subsequently defaulted on their obligations to the Bank and on July 1, 1981, the Bank recorded a quitclaim deed previously executed by the Crofts. Erickson, as president of Starhaven, was unaware of the assignment to the Bank or the Bank's quitclaim deed at the time he purchased the property from the Crofts in January of 1981.

Under the Croft-Starhaven contract for deed, Starhaven was required to make a down payment and installment payments at specific dates to the Crofts who in turn were to deposit the money into an escrow account payable to the First

National Bank of Minneapolis. In addition, Starhaven executed a quitclaim deed at closing which was placed in the escrow account. Starhaven failed to make the payments as required and the Bank sent a notice of default on July 24, 1981, to inform Starhaven that it had sixty days to cure the default or the property would be repossessed. The July notice from the Bank was Starhaven's first indication that the Bank was involved.

On February 16, 1982, the Bank filed Starhaven's quitclaim deed and, three days later, served Starhaven with notice to quit the property and notice of termination. Starhaven failed to quit the property and instead filed a quiet title action in Beaverhead County District Court. The Bank brought an unlawful detainer action against Starhaven and the two actions were subsequently consolidated. The trial court quieted title to the property in the Bank and Starhaven appealed to this Court. We reversed the District Court in our first opinion. The Bank subsequently petitioned for rehearing and, on rehearing, we affirmed that portion of the judgment quieting title in the Bank. Erickson, 697 P.2d at 1338.

Defendant Rule acted as the real estate broker for the Crofts and attorney John Warren of the law firm of Schultz, Davis & Warren drafted the buy/sell agreement and contract for deed in the transaction between Erickson and the Crofts. On January 15, 1986, Erickson filed this lawsuit against the Crofts et al. Erickson's complaint alleged separate counts of fraud, negligence, and breach of contract against real estate broker Rule and his realty company and counts of malpractice, constructive fraud, and breach of an implied oral contract against Warren and his law firm. Rule and Warren moved separately for summary judgment on the basis

3

that the applicable statutes of limitation had run and that Erickson's causes of action were time barred.

On December 7, 1987, the District Court granted the motions for summary judgment on the grounds that no genuine issue of material fact existed as to the causes of action stated against Rule, Rule Realty, Warren and his law firm. Erickson appeals the order of summary judgment and raises the following issues:

1. Does the doctrine of equitable tolling permit plaintiffs to maintain an action in tort more than three years after the discovery of the alleged negligent act?

2. Did the District Court correctly rule that Count VII of plaintiff's complaint was a tort claim for purposes of the statute of limitations?

3. Must a cause of action for the breach of an implied contract of employment and conflicts of interest in the context of the attorney/client relationship be brought within the statutory period proscribed by Montana's attorney malpractice statute, § 27-2-206, MCA?

The first two issues above apply only to defendant Larry Rule and Rule Realty in this action while the last issue applies to defendants Warren and his law firm Schultz, Davis & Warren.

Summary judgment is proper only were there are no genuine issues of material fact. Rule 56(c), M.R.Civ.P. The facts material to this case are not disputed on appeal. The issues to be decided by this Court on appeal are questions of law and we are free to review the District Court's legal analysis to draw our own legal conclusions. Schneider v. Leaphart (Mont. 1987), 743 P.2d 613, 616, 44 St.Rep. 1699, 1703.

Erickson's first issue relates to the statutes of limitation for fraud and negligence. Section 27-2-203, MCA,

4

prescribes a two-year limitation in which to commence an action for fraud in Montana. Actions based on negligence must be commenced within three years. Section 27-2-204, MCA. Erickson admits that the statute of limitations has run on both of his actions for fraud and for negligence. However, Erickson urges this Court to adopt and apply a doctrine called "equitable tolling" to avoid the consequences of the statute of limitations in this case.

Erickson contends that his action in filing a complaint against Rule with the Montana Board of Realty Regulation (the Board) on November 29, 1983, serves to toll the applicable statutes of limitation until such time as the outcome of the complaint was determined by the Board. In the Board of Realty complaint, Erickson admits having knowledge of the facts which allegedly give rise to the causes of action against the defendants in this case as early as June of 1981. The Board investigated Erickson's complaint against Rule and on May 5, 1985, dismissed the complaint. The Board of Realty complaint was filed within two years of Erickson's discovery of Rule's alleged misrepresentations. The complaint in Beaverhead County District Court was filed nearly five years after Erickson's discovery of the facts which allegedly give rise to the causes of action against Rule.

Erickson relies on case law from California, Alaska, and Arizona to support his argument. The cases cited stand for the proposition that, in certain well-defined instances, the statute of limitations will not be available as a defense where equitable principles justify tolling of the statute. See e.g., Jones v. Tracy School District (Cal. 1980), 611 P.2d 441; Elkins v. Derby (Cal. 1974), 525 P.2d 81; Gudenau v. Sweeny Ins. Co. (Alaska 1987), 736 P.2d 763; Hosogai v. Kadota (Ariz. 1985), 700 P.2d 1327. A California court summarized the doctrine of equitable tolling as follows:

5

> [C]ourts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designated to lessen the extent of his injuries or damage. (Citations omitted.)

Addison v. State (Cal. 1978), 578 P.2d 941, 943.

In Collier v. City of Pasadena (Cal.App. 1983), 191 Cal.Rptr. 681, 685, the Second District California Court of Appeals listed the three requirements which a party seeking to avoid the consequences of a statute of limitations must meet to invoke the doctrine of equitable tolling:

> (1) timely notice to the defendant [within the applicable statute of limitations] in filing the first claim;
>
> (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and
>
> (3) good faith and reasonable conduct by the plaintiff in filing the second claim. (Additions ours.)

Collier also notes the historic circumstances in which the doctrine of equitable tolling has been invoked:

> Prior to the 1970's, statutes of limitation had been tolled when a plaintiff filed a case which promised to lessen damages or other harm that might have to be remedied through a second case. The statute for the second case was tolled while the plaintiff pursued the first, presumably for the purpose of minimizing harm . . . Another line [of cases] tolled statutes of limitation when administrative remedies had to be exhausted before a court would consider the case . . . Still a third line of cases tolled the limitation period of a second action during the pendency of a first action later found to be defective . . .

> Starting in 1974, the California Supreme Court weaved these earlier lines of cases in to a new, broader doctrine -- "equitable tolling." This doctrine applies "'[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" (Citations omitted; additions ours.)

Collier, 191 Cal.Rptr. at 684.

Rule asserts that Erickson's complaint against him to the Board of Realty Regulation does not give him notice to begin investigating the facts which form the basis of the second claim in District Court. For this reason, Rule contends, Erickson has not met the first requirement of equitable tolling, timely notice to the defendant, as set forth in Addison and Collier. We agree.

As pointed out by Rule, the Board of Realty Regulation governs the licensing of real estate brokers and salesmen. Sections 37-51-201 et seq., MCA. Upon receiving a complaint against a real estate broker, and after investigation and hearing, the Board may revoke or suspend a broker or salesman's license. Section 37-51-321, MCA. Persons found to have violated the statutes pertaining to real estate brokers and salesmen may face criminal penalties and may also have damages in a civil action imposed against them by a "court of competent jurisdiction." Section 37-51-323, MCA. Therefore, Rule is correct in his assertion that the Board of Realty may only revoke or suspend a broker's license and has no power to award damages for negligence or fraud. Section 37-51-323, MCA. Rule also points out that the Board is not designated by law as a quasi-judicial board pursuant to § 2-15-124, MCA. See § 2-15-1867, MCA. Under these circumstances, Erickson's Board of Realty Regulation complaint does not give adequate notice of the existence of a legal claim. Gudenau, 736 P.2d at 768. Under the facts as

7

presented, Erickson has failed to meet the first element of equitable tolling. Consequently, we need not decide whether this Court recognizes the doctrine of equitable tolling and we need not address the parties' arguments with regard to the remaining two elements of the doctrine.

Erickson also makes an argument in passing that the litigation involved in Erickson v. First National Bank of Minneapolis (Mont. 1985), 697 P.2d 1332, 42 St.Rep. 423, somehow gave Rule notice of the facts which form the basis of the second claim. We note that Rule was not a party to the Erickson litigation nor were the claims in Erickson the same as presented in this action. The Erickson litigation does not satisfy the notice requirement of the doctrine of equitable tolling.

Count VII of Erickson's complaint incorporated by reference the fraud and negligence counts. Count VII went on to allege that an implied contract existed between Erickson and Rule and that Rule breached certain duties that arose from the implied contractual relationship. The duties allegedly breached are identical to those alleged in the fraud and negligence counts. Erickson acknowledges that no express oral or written contract existed between him and Rule. Nonetheless, Erickson argues in his second issue on appeal that Count VII is an implied contract action and that the five year statute of limitations for unwritten contracts specified in § 27-2-202(2), MCA, applies. The District Court ruled that the "gravamen" of the causes of action alleged in Count VII sound in common law fraud and negligence. The District Court relied on this Court's decision in Quitmeyer v. Theroux (1964), 144 Mont. 302, 395 P.2d 965, to conclude that, regardless of the contract label placed on Count VII by Erickson, Count VII "simply rehashes" the fraud and

8

negligence claims and is, therefore, time barred by the statutes of limitations, § 27-2-203 and § 27-2-204, MCA.

Erickson contends that he may elect between a contract theory or negligence theory where his claim has a basis under either theory and cites to Unruh v. Buffalo Bldg. Co. (Mont. 1981), 633 P.2d 617, 618, 38 St.Rep. 1156, 1158, for support. Erickson's contention in this regard begs the question because the election to pursue one cause of action over another must be more than a mere relabeling of a claim to avoid the consequences of a statute of limitations.

In Unruh this Court recognized that "'[u]nder certain circumstances, a ground of liability in tort may coexist with a liability in contract, giving the injured party the right to elect which form of action he will pursue.'" Unruh, 633 P.2d at 618 (citing Garden City Floral Co. v. Hunt (1953), 126 Mont. 537, 255 P.2d 352). Unruh is unpersuasive in this case. The Unruh holding was premised on the fact that the claim in question was not based on negligence but was based on the breach of an implied warranty. For that reason, this Court concluded that the plaintiff could elect to pursue the implied warranty theory and the eight year statute of limitations for contracts would apply. Unruh distinguishes Quitmeyer because the claim in Quitmeyer was based on negligence. While Count VII of Erickson's complaint alleges the existence of an implied contract, the asserted actionable conduct is based on the same fraud and negligence allegations contained in the time barred negligence and fraud counts of his complaint. The gravamen of the claim, not the label attached, controls the limitations period to be applied to that claim. Thiel v. Taurus Drilling Ltd. (Mont. 1985), 710 P.2d 33, 38, 42 St.Rep. 1520, 1527; Quitmeyer, 395 P.2d at 969. The gravamen of Count VII is fraud and negligence and the claim is time barred by § 27-2-203 and § 27-2-204, MCA.

9

Rule also argues that Erickson has failed to present a genuine issue of material fact as to the existence of an implied contract between him and Erickson. The above discussion presumes that an implied contract existed but finds that the claim asserted sounds in fraud and negligence and is, therefore, time barred. From the above analysis it is apparent that Erickson's Count VII is time barred regardless of the existence of an implied contract because of the nature of the claim asserted. While we tend to agree with Rule that there are no facts to establish an implied contract, we need not address the parties' arguments on the subject in light of the foregoing discussion.

Erickson's final issue affects only defendant Warren and his law firm. The District Court found Erickson's legal malpractice claim against Warren to be time barred by the legal malpractice statute of limitations, § 27-2-206, MCA. Erickson's complaint also alleged the existence of an implied contract in the context of the attorney-client relationship. The District Court ruled that this implied contract claim, though "novel and somewhat ingenious," was also time barred by the legal malpractice statute of limitations. The District Court reasoned as follows:

> To escape the obvious consequences of the legal malpractice statute . . . the Plaintiffs seek to stay in court on an implied contract theory by invoking the five year statute (27-2-202, MCA).
>
> . . .
>
> The Court will not allow a party to escape the consequences of a specific malpractice statute [of limitations] by permitting a party to state a claim for professional negligence in terms of a breach of contract. To do so would make the malpractice statute meaningless. If Plaintiff's position is sound, there

10

> would have been no need for the 1977 malpractice statute . . .
>
> The Court has considered the authorities cited by Plaintiffs but finds them to be inapplicable since the jurisdictions have no malpractice statute similar to § 27-2-206, MCA.
>
> In summary, there are no disputed issues of fact. The Plaintiffs admittedly had knowledge of the facts essential to their malpractice claim in 1981. Such claims are accordingly barred by the three-year limitation of action (§ 27-2-206, MCA). This section applies whether the action is premised in tort or contract. (Emphasis theirs; additions ours.)

The District Court's order granting summary judgment to Warren is dated December 7, 1987. Erickson filed a notice of appeal on January 7, 1988. On March 25, 1988, this Court decided the case of Schweitzer v. Estate of Halko (Mont. 1988), 751 P.2d 1064, 1066, 45 St.Rep. 611, 613-614. Warren argues that the legal malpractice statute of limitations applies to all claims against an attorney in the attorney-client relationship regardless of how those claims are enumerated and cites to Schweitzer for support.

In Schweitzer, the District Court was presented with several claims, including an implied contract claim, in the context of an attorney-client relationship. The District Court noted that, when an attorney undertakes to represent a client, a contract and relationship is formed. If the attorney's services are improper, the District Court reasoned, there is a breach of contract. These improper services, by definition are "bad" acts, or "bad" practices -- hence, malpractice. The District Court concluded that acts of legal malpractice, however denominated, fall within the purview of § 27-2-206, MCA. The District Court also

11

noted that a specific statute, § 27-2-206, MCA, prevails over a general statute, § 27-2-202, MCA, to the extent the two statutes are inconsistent with each other. We found the District Court's reasoning to be correct in Schweitzer and find Warren's related argument to control in this matter.

Erickson's claims against Warren and the law firm of Schultz, Davis & Warren sound in legal malpractice and are time barred by § 27-2-206, MCA. Schweitzer, 751 P.2d at 1066; see also, Southland Mechanical Constructors Co. v. Nixen (Cal.App. 1981), 173 Cal.Rptr. 917, 923.

We hold that Erickson's claim against Rule, Rule Realty, Warren and Schultz, Davis & Warren are time barred and summary judgment was properly granted by the District Court.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

12