No. 04-120

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 303

AMBER K. ARTHUR,

       Plaintiff  and Appellant,

   v.

PIERRE LIMITED, a Montana Corporation, d/b/a
The Pollard Hotel; DAVID H. KNIGHT, individually;
HOTEL COMPANY OF RED LODGE, INC., a Montana
Corporation; GARGOYLE COMPANY OF RED LODGE,
a Montana Corporation; 11th STREET CORPORATION,
a Montana Corporation; and RLG MANAGEMENT
COMPANY, INC., a Montana Corporation,

       Defendants and Respondents.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                   In and For the County of Carbon, Cause No. DV-01-27
                   Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              L.B. Cozzens, Paul D. Odegaard; Cozzens, Warren & Harris,
              Billings, Montana

       For Respondents:

              James R. Halverson; Herndon, Sweeney & Halverson,
              Billings, Montana

                              Submitted on Briefs:  August 3, 2004

                                   Decided:  November 1, 2004

Filed:

                _____
                          Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      Amber K. Arthur (Arthur) appeals from the judgment entered by the Twenty-Second Judicial District Court, Carbon County, on its order granting summary judgment to Defendants as to all six claims raised in Arthur's complaint.  We affirm.

¶2      We restate the issues on appeal as follows:

¶3      1. Did the District Court err in granting summary judgment to the Defendants on five of Arthur's claims based on its determination that the claims were precluded by the exclusive remedy provision of the Montana Human Rights Act?

¶4      2. Did the District Court err in granting summary judgment to the Defendants on Arthur's sixth claim based on its determination that the claim was barred by the applicable statute of limitations?

## BACKGROUND

¶5      In August of 1991, David Knight (Knight) incorporated the Hotel Company of Red Lodge (Hotel Company) under Montana law.  Shortly thereafter, the Hotel Company purchased the Pollard Hotel (Pollard), a hotel, restaurant and bar located in Red Lodge, Montana. Knight subsequently incorporated Pierre Limited under Montana law in December of 1992.  In June of 1994, the Hotel Company and Pierre Limited entered into an agreement pursuant to which the Hotel Company paid Pierre Limited to manage the Pollard's hotel and restaurant operations.

¶6    In January of 1995, Arthur became employed as a waitress in the Pollard's dining room. On August 2, 1997, the Pollard hired James Kennedy (Kennedy) as a night auditor. Approximately one month after beginning work for the Pollard, Kennedy received a written reprimand from the Pollard's management for making an improper comment to a different waitress in the Pollard's dining room. Soon after that, according to Arthur, Kennedy began subjecting Arthur to comments and actions of a sexually harassing nature.

¶7    Arthur resigned from her employment with the Pollard in August of 1998. Although her resignation letter did not specify her reason for leaving, Arthur subsequently contacted the Montana Human Rights Commission (MHRC) seeking assistance in filing a sexual harassment claim against the Pollard. In January of 1999, Arthur filed a written discrimination complaint against the Pollard with the MHRC, alleging the following incidents and conduct by Kennedy and Pollard management.

¶8    Beginning in December of 1997, Kennedy directed comments to Arthur when she walked past his work station regarding her body and her personal relationship with her boyfriend. In January of 1998, Arthur and another female employee approached the Pollard's assistant manager and expressed concern regarding inappropriate comments by Kennedy. The assistant manager took no action to resolve Arthur's concerns. That same month, Kennedy began to follow Arthur around the dining room while she was working and ask her questions about her personal life. In February of 1998, Kennedy slapped Arthur on the buttocks one day when she walked past his work station. Also beginning in February of 1998, Kennedy would approach Arthur in the dining room office or behind the bar on various

3

occasions and stand in the entryway so she was "cornered" and could not move. Kennedy also appeared at Arthur's second job at a local pizza company to bring her gifts. Arthur again complained of Kennedy's actions to Pollard management in March of 1998, but no action was taken.

¶9 One afternoon in April of 1998, Arthur received an anonymous telephone call at her home. She recognized the voice on the phone as Kennedy. During the call, Kennedy stated he was the person who had been making prior anonymous phone calls to her. Arthur immediately contacted the Pollard, and she met with three members of the Pollard management staff that afternoon. Arthur was told that a written record of the meeting and her complaints would be made by the Pollard's general manager. Although management told Arthur she would no longer be left alone in the dining room at night when Kennedy was working, by May of 1998 Arthur was being left alone at night to complete the day's paperwork. In June of 1998, Kennedy again began approaching Arthur in the dining room to talk to her. One evening in that same month, when Arthur was bringing money from the dining room to the front office, Kennedy stated to her that "I like to beat my waitress." Arthur reported the incident to Pollard management, but no action was taken. In July of 1998, Arthur gave the Pollard her written two-week notice of resignation, stating her last day of work was August 1, 1998. After Arthur resigned from the Pollard, Kennedy continued to follow her around town and she eventually obtained a restraining order against him. At the time she filed her discrimination complaint against the Pollard with the MHRC, charges were pending against Kennedy for violating the restraining order.

4

¶10 After Arthur filed her complaint, the MHRC contacted Knight requesting a response to the complaint on behalf of the Pollard. The MHRC specifically requested a copy of Arthur's personnel file, as well as statements from Kennedy and the Pollard management staff responding to Arthur's allegations. Knight responded that Kennedy and the various management staff members named in the complaint no longer worked for the Pollard and, as a result, he was unable to obtain their statements. He provided the personnel files of both Arthur and Kennedy. Kennedy's file contained only a reference to the incident in August of 1997 involving a different Pollard dining room employee; there was no reference to any of the other incidents alleged by Arthur. Moreover, Knight stated the Pollard had no other records documenting the incidents alleged in the complaint.

¶11 The MHRC then requested that Arthur provide a written rebuttal to Knight's response. Arthur failed to do so. Consequently, on April 6, 1999, the MHRC sent Arthur a notice of dismissal and right to file a civil action in district court. The notice specifically stated that Arthur had 14 days after being served with the notice in which to file objections to the dismissal and, if she did not file objections, she had 90 days from service in which to file an action in district court if she wished to pursue her complaint. Arthur did not file objections to the notice of dismissal and did not file an action in district court within 90 days.

¶12 On April 19, 2001, however, Arthur filed a complaint in the District Court against Knight and Pierre Limited alleging various tort causes of action and requesting compensatory and punitive damages. More than two years later, she filed an amended complaint, in part to add as named defendants various corporations incorporated by Knight under Montana law

5

(hereafter, Knight and all the corporations are, collectively, "the Defendants"). Arthur's amended complaint asserted the following causes of action: (1) failure to provide a safe place to work, (2) negligent retention of Kennedy, (3) negligent supervision of Kennedy, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) sexual harassment under the Montana Human Rights Act (MHRA), §§ 49-2-101, MCA, *et seq.*

¶13 The Defendants subsequently moved the District Court for summary judgment, asserting that the first five of Arthur's claims were barred by the exclusive remedy provision of the MHRA and her sexual harassment claim was barred by the applicable statute of limitations. The District Court agreed and granted summary judgment to the Defendants on all of Arthur's claims. Arthur appeals.

STANDARD OF REVIEW

¶14 We review a district court's ruling on a summary judgment motion *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by that court. Jobe v. City of Polson, 2004 MT 183, ¶ 10, 322 Mont. 157, ¶ 10, 94 P.3d 743, ¶ 10. Rule 56(c), M.R.Civ.P., provides that summary judgment shall be granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. If the

6

moving party meets this burden, the burden shifts to the nonmoving party to establish, by more than mere denial and speculation, that a genuine issue of material fact exists. If a court determines there are no genuine issues of material fact, the court must determine whether the moving party is entitled to judgment as a matter of law. This determination constitutes a conclusion of law which we review for error. Jobe, ¶ 10.

DISCUSSION

¶15    1. Did the District Court err in granting summary judgment to the Defendants on five of Arthur's claims based on its determination that the claims were precluded by the exclusive remedy provision of the MHRA?

¶16    The MHRA recognizes that the right to be free from discrimination on the basis of race, creed, religion, color, sex, physical or mental disability, age or national origin is a civil right which includes the right to obtain and hold employment without discrimination. See § 49-1-102(1), MCA. Moreover, it is an unlawful discriminatory practice for an employer

> to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of race, creed, religion, color, or national origin or because of age, physical or mental disability, marital status, or sex when the reasonable demands of the position do not require an age, physical or mental disability, marital status, or sex distinction.

Section 49-2-303(1)(a), MCA. Sexual harassment constitutes sexual discrimination under the MHRA. Harrison v. Chance (1990), 244 Mont. 215, 221, 797 P.2d 200, 204. Furthermore, § 49-2-509(7), MCA, provides that

> [t]he provisions of [Title 49, chapter 2] establish the exclusive remedy for acts constituting an alleged violation of chapter 3 or this chapter, including acts that may otherwise also constitute a violation of the discrimination provisions of Article II, section 4, of the Montana constitution or 49-1-102. A claim or

7

request for relief based upon the acts may not be entertained by a district court other than by the procedures specified in this chapter.

¶17    The Defendants moved the District Court for summary judgment on Arthur's causes of action alleging failure to provide a safe place to work, negligent retention, negligent supervision, intentional infliction of emotional distress and negligent infliction of emotional distress, asserting that these actions were barred by § 49-2-509(7), MCA.  They argued that these causes of action were simply restatements of her sexual discrimination claim under the MHRA because each was based on and arose out of Kennedy's conduct of sexually harassing Arthur during the course of their employment at the Pollard.  The District Court agreed, concluding that "Arthur's various tort claims constitute a re-characterization of the sexual harassment claim and are subject to the exclusivity provision of the MHRA."  Arthur asserts the District Court's conclusion is erroneous.

¶18    Section 49-2-509(7), MCA, provides that the MHRA is the exclusive remedy for claims of sexual discrimination in employment.  It bars a plaintiff from pursuing other tort claims where those claims arise from underlying allegations of sexual discrimination or harassment.  See, e.g., Harrison, 244 Mont. at 223, 797 P.2d at 205; Bruner v. Yellowstone County (1995), 272 Mont. 261, 267, 900 P.2d 901, 905; Fandrich v. Capital Ford Lincoln Mercury (1995), 272 Mont. 425, 431, 901 P.2d 112, 115.  Arthur does not dispute our holdings in these cases.  She asserts, however, that Kennedy's actions went beyond mere sexual harassment, escalating to criminal conduct such as sexual assault, stalking and intimidation, and that she suffered injuries and damages of a greater degree than those

8

typically stemming from workplace sexual harassment. Thus, she contends her tort causes of action are not barred by § 49-2-509(7), MCA, because they are based on conduct that is different-in-kind and distinct from sexually discriminatory conduct.

¶19 Arthur relies on Brock v. United States (9th Cir. 1995), 64 F.3d 1421, in support of her argument that conduct which goes beyond mere sexual harassment can form the basis of tort claims independent from, and not preempted by, statutory remedies such as the MHRA. She further asserts that we recognized, and implicitly approved, the Brock rationale in this regard in Beaver v. DNRC, 2003 MT 287, 318 Mont. 35, 78 P.3d 857, and, therefore, should apply Brock in the present case to determine that her tort claims are not barred. The Defendants respond that this Court has never adopted the Brock rationale and should not do so under the facts of this case.

¶20 In Brock, the plaintiff brought a negligence action against her employer pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), §§ 2671 *et seq.* (FTCA), based on allegations that her supervisor sexually harassed her by his conduct toward her, which included numerous sexual comments, repeated sexual assaults and rape. The employer moved to dismiss the action, arguing *inter alia* that the plaintiff's claims were based on sexual discrimination and, as a federal employee, her exclusive remedy for claims of sexual discrimination was pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII). The United States District Court for the Eastern District of Washington agreed that the plaintiff's FTCA claim was precluded by Title VII and dismissed the action. The plaintiff appealed. Brock, 64 F.3d at 1422.

9

¶21 The Ninth Circuit Court of Appeals reversed the district court's dismissal of the plaintiff's FTCA claims which were based on her supervisor's conduct. In doing so, the court first observed that the alleged conduct underlying the plaintiff's claims constituted sexual discrimination, for which Title VII provides the exclusive remedy. Brock, 64 F.3d at 1422-23. However, the court also acknowledged prior Ninth Circuit case law which held that Title VII is not the exclusive remedy for federal employees who suffer "highly personal" wrongs which constitute more than mere sexual discrimination. Brock, 64 F.3d at 1423 (citations omitted). The court then concluded that the harm inflicted on the plaintiff--namely, repeated sexual assaults and rape--constituted highly personal violations which went beyond sexual discrimination and, consequently, the plaintiff's claims under the FTCA were not precluded by Title VII. Brock, 64 F.3d at 1424.

¶22 At the outset, we observe that Arthur's suggestion that we recognized and approved the Brock rationale in Beaver for application to the MHRA's exclusive remedy provision is incorrect. The plaintiff in Beaver filed a complaint, which included a Title VII claim, against her employer and her supervisor in district court based on her allegation that her supervisor's act of sexually assaulting her constituted sexual discrimination by creating a hostile work environment. Beaver, ¶¶ 23 and 25. The district court ruled in favor of the defendants on the Title VII sexual discrimination claim, concluding the plaintiff failed to prove that the single incident of sexual harassment was sufficient to create a hostile working environment. Beaver, ¶ 25.

¶23 On appeal, the plaintiff argued that, pursuant to federal case law, the district court's conclusion was erroneous because even a single incident of sexual assault can alter the victim's conditions of employment and create a hostile working environment as contemplated by Title VII. Beaver, ¶ 33. In addressing her argument, we discussed the factual and legal aspects of the federal cases she relied on, including Brock, and concluded they did not support her position with regard to the Title VII claim. See Beaver, ¶¶ 34-48.

¶24 Beaver is readily distinguishable from the present case. No Title VII claim is at issue here. More importantly, Beaver did not relate in any way to the issue now before us, which is whether the MHRA precludes separate tort claims under the circumstances of this case.

¶25 Arthur asserts that Kennedy's actions went beyond mere sexual harassment, escalating to criminal conduct such as sexual assault, stalking and intimidation. However, the fact that sexually harassing conduct also may constitute criminal conduct does not necessarily mean that it is not sexual discrimination as contemplated by the MHRA. For example, the plaintiff in Harrison alleged her employer subjected her to conduct which arguably could be deemed sexual assault by forcibly kissing her. We concluded the conduct amounted to sexual harassment for which the exclusive remedy was the MHRA. Harrison, 244 Mont. at 223, 797 P.2d at 205. We further stated that sexual harassment giving rise to a sexual discrimination action can consist of unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature. Harrison, 244 Mont. at 221, 797 P.2d at 203 (citing 29 C.F.R. § 1604.11(a)). Here, Arthur's allegations that Kennedy made inappropriate personal comments, followed her about the dining room while she worked,

11

"cornered" her in the office and slapped her on the buttocks once, if taken as true, clearly establish "verbal or physical conduct of a sexual nature" which constitutes sexual harassment.

¶26 Moreover, much of the conduct she alleges in support of her assertion that Kennedy's conduct was criminal in nature occurred after her employment with the Pollard ended. This includes Kennedy's appearing outside her home, driving by her home at night and following her around town while she attended to personal and work-related activities, as well as being arrested for violating several restraining orders she obtained after she left the Pollard's employ. We conclude Arthur has failed to establish that Kennedy's conduct during their employment with the Pollard went beyond mere sexual harassment.

¶27 As a result, pursuant to § 49-2-509(7), MCA, and our holdings in Harrison, Bruner and Fandrich, the MHRA is the exclusive remedy for claims of sexual discrimination in employment and precludes other tort claims which arise from underlying allegations of sexual discrimination or harassment. Furthermore, we conclude that the District Court did not err in concluding that Arthur's various tort claims are a re-characterization of her sexual harassment claim and are subject to the exclusivity provision of the MHRA. We hold, therefore, that the District Court did not err in granting summary judgment to the Defendants on Arthur's five tort claims based on its determination that the claims were precluded by § 49-2-509(7), MCA.

¶28 2. Did the District Court err in granting summary judgment to the Defendants on Arthur's sixth claim based on its determination that the claim was barred by the applicable statute of limitations?

12

¶29 In their motion for summary judgment, the Defendants argued that Arthur's sexual harassment claim under the MHRA is barred by the 90-day statute of limitations set forth in § 49-2-509(5), MCA, because she did not file her complaint in the District Court until approximately two years after service of the MHRC's notice of dismissal. Conceding that her complaint was not filed within the 90-day period, Arthur asserted that the statute of limitations should be tolled under the doctrines of equitable estoppel and equitable tolling. The District Court concluded that neither doctrine applied under the facts of the case and, consequently, dismissed Arthur's sexual harassment claim as time-barred. Arthur asserts error. We address her arguments regarding equitable estoppel and equitable tolling in turn.

a. Equitable Estoppel

¶30 The doctrine of equitable estoppel operates to prevent a party from unconscionably taking advantage of a wrong while asserting a strict legal right. Selley v. Liberty Northwest Ins. Corp., 2000 MT 76, ¶ 11, 299 Mont. 127, ¶ 11, 998 P.2d 156, ¶ 11. Generally, "estoppel arises when a party through its acts, conduct, or acquiescence, has caused another party in good faith to change its position for the worse." Selley, ¶ 9. A party asserting equitable estoppel has the affirmative duty to establish the following six elements by clear and convincing evidence:

> (1) the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) the party estopped must have knowledge of these facts at the time of the representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to that party; (3) the truth concerning these facts must be unknown to the other party at the time it was acted upon; (4) the conduct must be done with the

13

intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party and lead that party to act; and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse.

Selley, ¶ 10 (citations omitted). Equitable estoppel is not favored. Bruner, 272 Mont. at 268, 900 P.2d at 905. The failure to establish even one of the six elements of equitable estoppel dooms the claim. City of Whitefish v. Troy Town Pump, Inc., 2001 MT 58, ¶ 20, 304 Mont. 346, ¶ 20, 21 P.3d 1026, ¶ 20.

¶31 In support of her equitable estoppel argument, Arthur contended that Knight concealed or misrepresented material facts when he informed both her and the MHRC that, prior to the fall of 1998, he had no knowledge of her complaints regarding Kennedy and that no documentation of her harassment complaints--including documentation of Arthur's meeting with Pollard management in April of 1998--existed in the Pollard's files. Arthur also contends that Knight made the alleged misrepresentations of fact with the intent that she rely upon them, and she did rely on the misrepresentations to her detriment when she concluded there was no use in pursuing her sexual harassment complaint either with the MHRC or in District Court.

¶32 Recognizing that all six elements of equitable estoppel must be established, the District Court focused on the third element and determined Arthur failed to establish she did not know the truth regarding the facts Knight allegedly misrepresented. The court concluded that Arthur, as the alleged victim, had personal knowledge of Kennedy's conduct and "was always in a position to know the essential facts independent of either Knight or other Pollard

14

Hotel employees." Arthur asserts the District Court erred in disposing of her equitable estoppel argument on summary judgment and also erred in determining she had not established the third element of equitable estoppel.

¶33 Arthur first argues that whether circumstances warrant application of equitable estoppel is a factual question for determination by the trier of fact and, therefore, is not subject to summary judgment. However, even where issues involve factual questions ordinarily not susceptible to summary judgment, if the party moving for summary judgment meets its burden of establishing the absence of material fact, the burden shifts to the nonmoving party to establish otherwise. Henricksen v. State, 2004 MT 20, ¶ 19, 319 Mont. 307, ¶ 19, 84 P.3d 38, ¶ 19 (citation omitted). In the present case, the District Court determined--as a matter of law--that Arthur failed to carry her burden. Questions of fact may be determined as a matter of law where reasonable minds cannot differ. Henricksen, ¶ 19. For these reasons, we decline to conclude that equitable estoppel cannot be considered during summary judgment proceedings.

¶34 Arthur also argues that the District Court erred in concluding she had not established that the truth regarding Knight's alleged misrepresentations was unknown to her. Arthur contends Knight misrepresented his knowledge of her complaints by stating that he was not aware of them prior to October of 1998. She further contends that she relied on Knight's misrepresentation in that "[s]he abandoned [the MHRC] complaint because Mr. Knight mislead both her and the MHRC into believing that the Pollard had no . . . knowledge of Mr. Kennedy's misconduct and, therefore, she could not establish her claim . . . ." However,

15

Arthur has not established that the truth regarding Knight's alleged misrepresentation of his and the Pollard's knowledge of her complaints was unknown to her at the time she discontinued pursuit of her sexual discrimination claim.

¶35    Under the third element of the equitable estoppel test, the party asserting estoppel must lack knowledge of the truth regarding the alleged misrepresented fact. Elk Park Ranch, Inc. v. Park County (1997), 282 Mont. 154, 166, 935 P.2d 1131, 1138. Here, Arthur knew that Pollard's management staff had knowledge of her complaints about Kennedy because she personally informed various of the management staff of the harassing incidents both at the April of 1998 meeting and at other times during her employ with the Pollard. Furthermore, as the alleged victim of the sexual harassment, Arthur had personal knowledge of Kennedy's conduct and the response--or lack thereof--by the Pollard's management staff to her complaints. Thus, Arthur always had knowledge of, and could testify to, the facts essential to her sexual discrimination claim independent from Knight and the Pollard's management staff. Indeed, her initial written complaint with the MHRC detailed her knowledge of these facts.

¶36    Arthur also asserts that Knight misrepresented his personal knowledge of her complaints about Kennedy's conduct. We have held that, as to the third element of the equitable estoppel test, the party asserting estoppel not only must lack actual knowledge of the truth, but also lack a readily available means of knowledge as to the truth. Elk Park, 282 Mont. at 166, 935 P.2d at 1138. Here, Scott Pirraglio (Pirraglio), one of the Pollard's management staff involved in the April of 1998 meeting, testified in his deposition that he

16

informed Knight of Arthur's harassment complaints regarding Kennedy immediately following the meeting. Had Arthur contacted Pirraglio during the course of the MHRC proceedings, she could have obtained this information from him. Thus, Arthur has failed to establish that she had no knowledge--or lacked a readily available means of obtaining knowledge--of the truth regarding Knight's statement.

¶37 With regard to Knight's statement that the Pollard's files contained no documentation of Arthur's complaints about Kennedy--namely, documentation of the meeting between Arthur and the Pollard's management staff in April of 1998--the record establishes that Arthur was present at that meeting, knew that notes were taken during the meeting and was told by the management that the notes would be placed in the Pollard's files. Thus, Arthur had knowledge that documentation of her complaints existed at least during the meeting. In any event, whether the Pollard had documentation of Arthur's complaints is not particularly material to her claim.

¶38 Finally, it is difficult to accept Arthur's arguments that the Defendants should be equitably estopped from asserting a statute of limitations defense--based on Knight's alleged misrepresentations in his response to her MHRC complaint--in light of the fact that she had no additional or new information in these regards when she subsequently pursued her sexual harassment claim in the District Court. Equitable estoppel requires that there be a misrepresentation of fact and that the party asserting estoppel be unaware of the truth concerning the fact at the time he or she acts in reliance thereon. See Selley, ¶ 10. The corollary to this is that the party acting in reliance on the misrepresented fact at some point

17

discovers the truth in order to subsequently assert the doctrine. Arthur does not contend that, at some point between the time she discontinued pursuit of her MHRC complaint and the time she filed her District Court complaint, she learned Knight's response to the MHRC regarding his knowledge of her complaints was untruthful. Nor does she contend that, contrary to Knight's assertion, documentation of her complaints to the Pollard's management staff actually exists.

¶39   We conclude, based on the above discussion, that the District Court did not err in determining Arthur failed to establish the third element of equitable estoppel.

### b. Equitable Tolling

¶40   Under Montana law, the doctrine of equitable tolling provides that

> the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: "(1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to [sic] defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim."

Harrison, 244 Mont. at 228, 797 P.2d at 208 (quoting Erickson v. Croft (1988), 233 Mont. 146, 150-51, 760 P.2d 706, 708); see also Hash v. U.S. West Communications Services (1994), 268 Mont. 326, 332, 886 P.2d 442, 446. In Hash, we held that equitable tolling was not applicable in a discrimination case because the claimant did not have more than one legal remedy available, any one of which could be pursued in good faith. Rather, the claimant's exclusive legal remedy was under the MHRA. Hash, 268 Mont. at 332-33, 886 P.2d at 446. Similarly, Arthur's exclusive remedy for her sexual discrimination case was pursuant to the

MHRA.  Arthur did not have a second legal remedy which she could have--or did--pursue in good faith.

¶41    Arthur asserts, however, that federal courts have applied a broader interpretation of the equitable tolling doctrine in the context of employment discrimination cases and urges this Court to adopt and apply the federal interpretation in this case.  Under that federal interpretation, as posited by Arthur, where a "plaintiff because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time, the statute of limitations will be tolled until he is able through the exercise of proper diligence to file his suit."  Miller v. Runyon (7th Cir. 1996), 77 F.3d 189, 191.  Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."  Cada v. Baxter Healthcare, Corp. (7th Cir. 1990), 920 F.2d 446, 451.  Arthur contends that equitable tolling, as defined by the federal courts, is applicable here because she had an irremediable lack of information as a result of Knight's concealment of the documentation--and his knowledge--of her harassment complaints.

¶42    We need not discuss or determine whether to adopt the Miller/Cada interpretations of equitable tolling here, because Arthur clearly does not come within the terms of those interpretations.  Arthur was aware she had a sexual discrimination claim against the Pollard as evidenced by her initiating the administrative process via filing a MHRC complaint. Moreover, as the victim of the alleged sexual harassment, she had knowledge of the vital facts underlying her claim, including the acts constituting the harassment, her complaints to

19

the Pollard's management and management's failure to adequately address and resolve her complaints.

¶43    We hold that the District Court did not err in granting summary judgment to the Defendants on Arthur's sexual harassment claim based on its determination that the claim was barred by the statute of limitations set forth in § 49-2-509(5), MCA.

¶44    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE