No. 04-090

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 225

LET THE PEOPLE VOTE, SHARON DEMEESTER, AMY MOHN,
MEGHAN SAUNDERS, DAN BRUNET and LINDA KATSUDA,

        Plaintiffs and Appellants,

  v.

BOARD OF COUNTY COMMISSIONERS OF FLATHEAD COUNTY,
the governing body of the County of Flathead, acting by and through GARY HALL,
ROBERT W. WATNE and HOWARD W. GIPE and FLATHEAD COUNTY ELECTION
DEPARTMENT, acting by and through PAULA ROBINSON and DIANE MURER,

        Defendants and Respondents,

BRENT HALL, GREG STEVENS, RICHARD H. MOHRENWEISER, and KEITH BRIAN SIPE,

        Intervenors.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead, Cause No. DV 03-663C
                The Honorable Stewart E. Stadler, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Caryn Miske, Attorney at Law, Frenchtown, Montana; Roger M. Sullivan,
                McGarvey, Heberling, Sullivan & McGarvey, P.C., Kalispell, Montana

        For Respondents:

                Jonathan B. Smith, Deputy County Attorney, Flathead County, Kalispell,
                Montana

        For Intervenors:

                Duncan Scott, Scott and Scott, P.C., Kalispell, Montana

                      Submitted on Briefs:  May 4, 2004

                      Decided:  September 13, 2005

Filed:

                          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Appellants Let the People Vote, et al. (LPV) appeal an Order of the District Court for the Eleventh Judicial District, Flathead County, granting a Motion to Quash Alternative Writ and to Dismiss filed by Respondents Board of County Commissioners, et al. (the Commissioners). We affirm.

¶2 LPV raises the following issues on appeal:

¶3 1. Whether the Commissioners' application of § 76-1-604(4), MCA, limiting participation in the petition and referendum process concerning Resolution No. 1644A to "qualified electors of the area covered by the growth policy" violates the provisions of Article XI, § 8 of the Montana Constitution, which guarantees the right of initiative and referendum to "the qualified electors of each local government unit."

¶4 2. Whether the doctrines of equitable tolling and equitable estoppel apply, thereby staying the 60- and 90-day statutory deadlines for the collection of petition signatures.

¶5 3. Whether LPV is entitled to attorney's fees and costs.

¶6 Because we find Issue 2 dispositive, we do not address Issues 1 and 3.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7 On July 28, 2003, Wolford Development, Inc. (Wolford) submitted an application to the Flathead County Planning Board (the Planning Board) to amend the Flathead County Master Plan (the Master Plan). The amendment proposed by Wolford would permit it to build a large scale, regional shopping mall to serve consumers from Canada to Polson. The proposed mall would be part of a broader development scheme for an area north of Kalispell

encompassing a total of 481 acres with 271 acres designated for commercial use, 64 acres designated for mixed use, 141 acres designated for suburban agricultural use and 5 acres designated for the Rose Crossing connector road.

¶8     The Stillwater Neighborhood Plan, a 1990 addendum to the Master Plan, encompasses 340 acres within the 481 acres of the Wolford amendment.  The Stillwater Neighborhood Plan originally designated 50 acres for commercial use and 290 acres for residential use. This plan was premised on annexation by the city of Kalispell and the extension of city services to the area, neither of which happened.  As noted in Wolford's application, "the subject property has been, and continues to be, used for crop production."

¶9     The Master Plan provides planning guidance for areas located outside the planning jurisdictions of the cities of Kalispell, Whitefish and Columbia Falls.  These cities have each adopted jurisdiction-wide growth policies or master plans that guide development within the cities and, in the cases of Whitefish and Columbia Falls, also extend outside the city limits. The Whitefish Growth Policy, which is approved by and binding on  both the city and county, covers an area up to four and a half miles beyond the city limits of Whitefish.  The planning boundary for Columbia Falls extends two miles beyond that city's limits.  These areas outside the city limits are referred to as "extra-territorial areas."

¶10    On September 10, 2003, the Planning Board recommended approving Wolford's proposed amendment to the Master Plan in spite of opposition from city and county residents. On November 5, 2003, the Commissioners adopted Resolution No. 1644A, which approved Wolford's application to amend the Master Plan.  Shortly after the approval of

3

Resolution No. 1644A, LPV was formed to put Resolution No. 1644A to a vote by the qualified electors of Flathead County through the initiative and referendum process.

¶11 LPV proposed to collect petition signatures from all qualified electors in Flathead County in accordance with Article XI, § 8 of the Montana Constitution, which provides:

> **Initiative and referendum.** The legislature shall extend the initiative and referendum powers reserved to the people by the constitution to the qualified electors of each local government unit.

However, the Flathead County Attorney's Office instructed the Flathead County Election Department that pursuant to the provisions of § 76-1-604(4), MCA, only qualified electors in the area covered by the Master Plan could sign the petition and vote on any resulting referendum. Section 76-1-604(4), MCA, provides:

> *The qualified electors of the area covered by the growth policy* may by initiative or referendum adopt, revise, or repeal a growth policy under this section. A petition for initiative or referendum must contain the signatures of 15% of *the qualified electors of the area covered by the growth policy.* [Emphasis added.]

¶12 LPV filed suit on December 9, 2003, seeking a Writ of Mandamus requiring the Commissioners to proceed with the initiative and referendum process, or in the alternative, seeking relief through declaratory judgment. An alternative Writ of Mandate issued, and the Commissioners moved to quash the writ and to dismiss. A hearing on the matter was held on January 12, 2004. At the hearing, the parties agreed that there were no factual disputes and that the court could rule as a matter of law. The court issued an Order on January 23, 2004, granting the Commissioners motion to quash and dismissing LPV's claims. The court determined that § 76-1-604(4), MCA, which restricts participants to those qualified electors

4

that reside in the area covered by the growth policy, is not contrary to Article XI, § 8 of the Montana Constitution. LPV appeals.

## DISCUSSION

¶13 *Whether the doctrines of equitable tolling and equitable estoppel apply, thereby staying the 60- and 90-day statutory deadlines for the collection of petition signatures.*

¶14 LPV contends on appeal that the doctrine of equitable tolling provides a compelling basis for this Court to stay the 60- and 90-day statutory deadlines for gathering petition signatures and that the Commissioners are equitably estopped from using the statutory deadlines to defeat the qualified electors' exercise of their petition rights.

¶15 The 60-day statutory deadline is found in § 7-5-132(1), MCA, which provides:

> The electors may initiate and amend ordinances and require submission of existing ordinances to a vote of the people by petition. If an approved petition containing sufficient signatures is filed prior to the ordinance's effective date or *within 60 days after the passage of the ordinance*, whichever is later, a petition requesting a referendum on the ordinance delays the ordinance's effective date until the ordinance is ratified by the electors. A petition requesting a referendum on an emergency ordinance filed *within 60 days of the effective date of the ordinance* suspends the ordinance until ratified by the electors. [Emphasis added.]

Here, the Commissioners adopted Resolution No. 1644A on November 5, 2003, thus LPV had until January 5, 2004, to file its petition as the sixtieth day, January 4, 2004, was a Sunday.

¶16 In addition, the 90-day statutory deadline is found in § 7-5-134(7), MCA, which provides: "All petition signatures must be collected and filed *within 90 days of the date of the notice that the petition has been approved as to form*." (Emphasis added.) In the instant

case, the 90-day clock for obtaining petition signatures started on December 8, 2003, when the Flathead County Election Department sent LPV a letter approving its petition for circulation. The 90 days expired on March 7, 2004, which was a Sunday. Thus, LPV had until March 8, 2004, to file its petition. In a letter dated March 23, 2004, the Flathead County Election Manager reported that the total number of valid signatures required to place LPV's referendum on the ballot was 4,331, and that the total number of signatures submitted to the Election Department by the March 8, 2004 deadline was only 3,483.

¶17    The District Court ruled against LPV on the issue of whether the Commissioner's application of § 76-1-604(4), MCA, violates the provisions of Article XI, § 8 of the Montana Constitution. The court did not reach the issues of equitable tolling or equitable estoppel.

¶18    The doctrine of equitable tolling provides that

> the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: "(1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to [sic] defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim."

*Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 40, 323 Mont. 453, ¶ 40, 100 P.3d 987, ¶ 40 (citing *Harrison v. Chance* (1990), 244 Mont. 215, 228, 797 P.2d 200, 208; *Erickson v. Croft* (1988), 233 Mont. 146, 150-51, 760 P.2d 706, 708). Hence, while a party is pursuing one of several legal remedies, the statute of limitations on the remedies not being pursued is tolled.

¶19    Here, LPV argues that because it urged the Commissioners to file suit under § 7-5-

6

135, MCA, to determine whose interpretation of § 76-1-604(4), MCA, and Article XI, § 8 of the Montana Constitution was correct, the statute of limitations and the deadline for the gathering of signatures was tolled. However, filing suit under § 7-5-135, MCA, was not a remedy available to LPV. It was the Commissioners' remedy and it was a discretionary remedy at that. Section 7-5-135(1), MCA, provides:

> *The governing body may direct* that a suit be brought in district court by the local government to determine whether the proposed action would be valid and constitutional, but such a suit must be initiated within 14 days of the date a petition has been approved as to form under 7-5-134. [Emphasis added.]

Simply because the Commissioners have the power to file a suit does not mean that they are required to file a suit. If they do choose to file suit, then under § 7-5-135(4), MCA, the period to collect signatures is tolled until the District Court resolves the suit. In this case, the Commissioners chose not to file suit and the period to collect signatures was not tolled. LPV cannot ground its equitable tolling argument in a remedy that was not its to pursue or when that remedy was not pursued by those entitled to pursue it.

¶20    LPV relies on *Nicholson v. Cooney* (1994), 265 Mont. 406, 877 P.2d 486, to support its equitable tolling argument. However, *Nicholson* is distinguishable from the instant case because *Nicholson* deals with tolling the statute of limitations for filing lawsuits about referendums, not with tolling the deadline for obtaining signatures on a petition. As the Intervenors point out in their brief on appeal, there is no statutory authority that would allow this Court to grant LPV additional time to gather petition signatures and there is no case precedent justifying such a step.

7

¶21 Accordingly, based on the foregoing, we hold that the doctrine of equitable tolling does not apply in this case.

¶22 LPV also argues on appeal that the Commissioners are equitably estopped from using the statutory deadlines to defeat the qualified electors' exercise of their petition rights. We have repeatedly stated that "[t]he doctrine of equitable estoppel operates to prevent a party from unconscionably taking advantage of a wrong while asserting a strict legal right" and that, generally, "estoppel arises when a party through its acts, conduct, or acquiescence, has caused another party in good faith to change its position for the worse." *Arthur*, ¶ 30 (quoting *Selley v. Liberty Northwest Ins. Corp.*, 2000 MT 76, ¶¶ 9-11, 299 Mont. 127, ¶¶ 9-11, 998 P.2d 156, ¶¶ 9-11).

¶23 Equitable estoppel is not favored and a party asserting equitable estoppel has the affirmative duty to establish the following six elements by clear and convincing evidence:

> (1) the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) the party estopped must have knowledge of these facts at the time of the representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to that party; (3) the truth concerning these facts must be unknown to the other party at the time it was acted upon; (4) the conduct must be done with the intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party and lead that party to act; and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse.

*Arthur*, ¶ 30. Hence, by its terms, equitable estoppel, "requires the misrepresentation of a material fact." *Elk Park Ranch, Inc. v. Park County* (1997), 282 Mont. 154, 165-66, 935 P.2d 1131, 1137-38 (citing *Dagel v. City of Great Falls* (1991), 250 Mont. 224, 234-35, 819

8

P.2d 186, 193; *In re Marriage of K.E.V.* (1994), 267 Mont. 323, 331, 883 P.2d 1246, 1252). Moreover, "[t]he failure to establish even one of the six elements of equitable estoppel dooms the claim." *Arthur*, ¶ 30 (citing *City of Whitefish v. Troy Town Pump, Inc.*, 2001 Mont. 58, ¶ 20, 304 Mont. 346, ¶ 20, 21 P.3d 1026, ¶ 20).

¶24    Here, LPV does not meet even the first element of equitable estoppel since it does not argue that the Commissioners misrepresented a material fact, only that the Commissioners failed to initiate suit after LPV urged them to do so.  Nor can LPV argue that the County Attorney misrepresented a material fact when he issued his opinion that under § 76-1-604(4), MCA, only qualified electors in the area covered by the Master Plan could sign the petition and vote on any resulting referendum.  The County Attorney's conduct consists solely of legal representations, not factual representations.

¶25    LPV has failed to establish the elements of equitable estoppel, therefore, we hold that equitable estoppel cannot serve as a legal justification to stay the statutory deadlines.

¶26    Since we have determined that neither equitable tolling nor equitable estoppel apply in this case, we do not reach LPV's argument under Article XI, § 8 of the Montana Constitution and § 76-1-604(4), MCA.  Accordingly, we affirm the District Court's Order granting the Commissioners' Motion to Quash Alternative Writ and to Dismiss.

¶27    Affirmed.

/S/ JAMES C. NELSON

We Concur:

9

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE